JAMES L. SMITH et al. v. JOHN W. McGREGOR.

*Pleading— Variance—Agent — Evidence —Deposition —Assignment of Error.*

1. A counter-claim which only alleges that the plaintiff is indebted to the defendant, without alleging further the nature and kind of such indebtedness, and how it arose, is imperfectly pleaded, and ought to be disregarded, and in such case a bill of particulars affixed to the pleadings as a part of it does not aid it.

2. Where, in such case, the plaintiff does not object to the counter-claim on account of the imperfect pleading, the Supreme Court, on appeal, will consider the issues which were tried on it in the Court below.

3. Where the answer alleged as a counter-claim, that the note sued on was endorsed to the plaintiff after maturity, and that the endorser was indebted to the defendant before the transfer of the note, for money paid by him as his surety, and the evidence offered to support it was a joint and several note, executed by the defendant and another party, who it was alleged was the agent of the endorser of the plaintiff, but nothing in the note offered in evidence showed any agency : *It was held,* a failure of proof, and the Court below properly charged the jury that there was no evidence to support the allegation of the counter-claim.

4. A power of attorney appointing an agent to wind up certain business of the non-resident principal, does not authorize the agent to borrow money on his account.

5. Where evidence only creates a vague impression of a fact, it should not be permitted to go to the jury.

6. Where the Court below excluded a deposition, but the record did not disclose the ground of the objection, but only the fact that the deposition was excluded, this Court will not consider the exception.

7. Where an entire deposition was objected to on the ground that the testimony contained in it was incompetent, but no particular part was pointed out, and no error assigned, the objection is too vague, and will not be considered.

CIVIL ACTION, tried before *MacRae, Judge,* and a jury, at Fall Term, 1885, of ANSON Superior Court.

The plaintiffs brought this action to recover the money due upon the single bond of the defendant, executed by him

to Thomas J. Smith, for $2,301.25, dated April 26th, 1875, to be due one day from the date thereof, and which the latter endorsed to the plaintiffs for value after its maturity.

In his answer to the complaint, the defendant alleged in general terms, that the said Thomas J. Smith was, at the time he so endorsed the said bond and before that time, justly indebted to him in sundry sums of money, greater than the amount due thereon, as stated in the "bill of particulars" annexed to his answer, and he demanded that the several sums mentioned, be set off against the said cause of action of the plaintiffs to the extent of their demands.

Among the items of charge mentioned in the bill of particulars, is the third one, stated thus:

"Nov. 6. Am't paid as surety on note to J. W. Leak, $2,240.00. Int. from 6 March, 1875, to Jan'y 1st, 1877."

On the trial, the defendant put in evidence a power of attorney, of which the following is a copy:

"STATE OF NORTH CAROLINA, ⎫
    ANSON COUNTY. ⎭

*Know all men by these presents,* that I, Thos. J. Smith, of Grimes county, Texas, for divers good and sufficient reasons me thereto moving, have nominated, constituted and appointed, and by these presents do nominate, constitute and appoint, my brother William C. Smith, of the county of Anson and State of North Carolina, my true and lawful agent and attorney in fact, for me and in my name and stead, to transact all matters of business, of whatsoever nature and kind in which I have or may have any interest, directly or indirectly, in the State of North Carolina; also in my name and for my use and benefit, to ask and demand for me and recover, all manner of debts or dues or rights or interest to which I may be or am entitled in said State, clear up and settle in such manner as he may deem best my interest in said State, and to execute all manner of convey-

ances in my name, to make title to any kind of property, real or personal. And to execute all such other rights, releases and acquittance in my name which may be required in final and complete settlement of my business of every kind and description, and I hereby ratify and confirm whatever my said attorney may thus do, in as full and ample a manner as if I was personally present and did the same myself. This power of attorney relates particularly to my business at New Forestville, in said county and State, in all its branches. I further claim the right to revoke this right at any time I see proper. Given under my hand seal, this the 29th day of January, 1869."

The following is a copy of so much and such parts of the case settled on appeal as is necessary to a correct understanding of the opinion of the Court:

"The defendant was examined on the trial as a witness in his own behalf, and the part of his testimony material here, is as follows:

On the third item, a note is produced and offered, $2,240:

Twelve months after date, we, or either of us, promise to pay Col. J. W. Leak, or order, two thousand two hundred and forty dollars, for value received.

WM. C. SMITH,  (Seal.)

March 6th, 1874. J. W. McGREGOR, (Seal.)

INDORSEMENTS:

Cr. by $100, November 5, 1877.
Cr. by $100, November 16, 1877.
Cr. by $200, November 24, 1883. A. B. LEAK.

Witness signed the note with W. C. Smith. W. C. Smith asked witness if witness would sign a note with him for some money; he said he had plenty of notes and accounts

and stock then, if he could realize on it, but it would take some time to do it, and debts were pressing him, debts made in connection with his business there, some northern debts and some in Wilmington; he said there would not be any danger of witness getting into trouble about it; that he had plenty of notes and accounts then, amounting to $6,000 or $7,000, that would amply secure witness against loss. Witness agreed to sign the note, and went to Rockingham with W. C. Smith and signed it there. Witness never heard of it again until 1876, when payment was demanded of him, and he gave a mortgage to the payee, J. W. Leak, to secure the debt, on a piece of land that would pay the debt. A mortgage was produced from J. W. McGregor and wife to J. W. Leak, 24th February, 1876, to secure the $2,240 note. Credits on the note, November 5th, 1877, $100; November 16th, 1877, $100, and March 26th, 1883, $200. Witness paid these amounts. J. W. Leak is dead. The land mortgaged is worth more than the debt.

When the note was signed, W. C. Smith got the money, $1,300 or $1,400, in check on New York, the balance in cash. He said that he was going to pay the debts of the concern; that they were pressing him; it was T. J. Smith's business. He let Cox & Boy have the check. How it was paid out afterwards, witness does not know. Objected to by plaintiffs. Overruled. Plaintiffs excepted. But, on this item, the Court afterwards instructed the jury that there was a variance between the allegation and the proof, and they could not consider the matter of Leak's note. Defendants excepted.

He was out here, I think, in 1875. He told me that as soon as he got to Wadesboro he was sued on accounts that his agent made here, and that he was afraid his agent had involved him here, and that he had fixed his property before he left Texas so that they could not get anything out of him. Objected to by plaintiffs.

As to the fifth item: This a credit of $641 on the account. Some of T. J. Smith's property was turned over to witness to apply to the Leak debt; witness sold it and credited it on the account. The notes and accounts of the concern were put in the hands of witness to secure that Leak debt. T. J. Smith came out here and demanded the property. Witness refused to give them up, and told him if he would pay the debt, witness would give them up. He said he would not do it. He would not allow witness to collect them. Witness had a conversation with W. C. Smith a very short time before the money was borrowed from J. W. Leak in February or March, 1874. The day before it was borrowed he took his books and showed witness the accounts, which, he said, were ample security, and said he was obliged to raise the money.

The witness W. E. Cox testified as follows: We had more or less transactions with W. C. Smith in 1874; received exchange from him and gave him exchange; referring to his books to refresh his memory, witness said the first draft for $800 was signed by me; the next, $50, by my father; and the next, $450, by me March 4th, 1874, all in the firm's name. The three drafts were drawn on ——— & Bennett, New York; during 1874, our firm was doing business with them and shipping cotton for them as commission merchants, and these drafts were drawn about this time. When W. C. Smith got the draft for $800, he had a check for $1,375.66, and wanted drafts for smaller amounts. The witness has a faint recollection that W. C. Smith said he got that check from J. W. Leak, of Rockingham. But don't know whether the draft was there that day; his best impression is that the draft was on J. W. Leak. He has no recollection of seeing his name on it; thinks his father was present, because their rule was to consult about such matters.

The witness, being cross-examined, said that he is a brother-in-law of defendant and son-in-law of W. C. Smith.

Has taken no interest in this matter; was forced to come here by a subpœna against his will.

Deposition of C. P. Mebane was offered and objected to by plaintiff, and ruled out, and the defendant excepted.

J. S. Darlington, a witness for defendant, testified that for a part of the year 1870–'71 he lived at New Forestville, and was superintendent of the works there. They were W. C. Smith's or Thos. J. Smith's; the witness engaged with W. C. Smith for Thomas J. Smith.

The business was all carried on in the name of W. C. Smith, agent. There was a large tannery, saw-mill and grist mill.

The following special instructions asked for by the plaintiff were given :

That there is no evidence that defendant signed the note made payable to John W. Leak and set up, as the surety of Thomas J. Smith. Defendant excepts.

That there is a variance between the allegation in the answer in regard to the set-off of the note of John W. Leak set up in his answer, and the proof, and the jury should not allow the same. Defendant excepts.

The presiding Judge, during the argument to the jury, stated that he would withdraw from the jury the evidence upon the third item of the bill of particulars, that pertaining to the Leak note, as not sustaining the allegations of the counter-claim. Thereupon the defendants asked to be allowed to answer the complaint in accordance with the testimony, and read an affidavit offered for a continuance at a former term, to show that plaintiffs had full notice, and would not be taken by surprise by such amendment.

The Court declined to permit an amendment of the answer at this stage of the trial, and defendant excepted.

The Court instructed the jury upon the third item of the bill of particulars, that there was a variance between the allegation and the proof, and that they could not consider

the said third item of the bill of particulars, the matters of the Leak note, and defendants excepted.

Plaintiffs admit that W. C. Smith was the agent of Thos. J. Smith, and that Thos. J. Smith is bound for all the authorized acts of W. C. Smith."

There was a verdict and judgment for the plaintiffs, and the defendant appealed to this Court.

*Messrs. John Devereux, Jr.,* and *J. D. Pemberton,* for the plaintiffs.

*Messrs. J. A. Lockhart,* and *P. D. Walker,* for the defendant.

MERRIMON, J., (after stating the facts). The counter-claim is very imperfectly alleged. Indeed, it could not be upheld as a pleading at all, unaided by the bill of particulars appended to the answer. It is stated only in the most general and indefinite terms, that the endorser of the single bond sued upon, is indebted to the defendant, and was, at and before the time of such endorsement, in a sum of money greater than that demanded by the complaint; but what the nature and consideration of such indebtedness was—when, how, and in what amount it arose—is not stated. And treating the bill of particulars annexed thereto as part of the answer, it supplies such essential constutive facts very imperfectly—not in the shape of a pleading, but a scarcely intelligible memorandum.

A counter-claim should be alleged with clearness and precision; its nature, and the consideration supporting it; when, how, and where it arose, should be stated with reasonable certainty. This the statute requires, and moreover, it is necessary to just and intelligent procedure. The counter-claim is substantially the allegation of a cause of action on the part of the defendant against the plaintiff, and it ought to be set forth with the same precision as if alleged in the complaint.

The Court might—ought—to have disregarded the counter-claim so imperfectly alleged as a pleading, or it ought to have required the defendant to set it forth distinctly, and with certainty and precision. But as it did not, and the plaintiff did not object, and the parties were allowed to go to trial without amendment, as suggested, it becomes necessary to ascertain what the defendant alleged in respect to the " third item " of his counter-claim, and what was put in issue by the replication of the plaintiffs in respect thereto.

Treating the bill of particulars as part of the answer, it seems to us that a reasonable interpretation of it implies an allegation on the part of the defendant, that Thomas J. Smith, the endorser of the bond sued upon by the plaintiffs, was indebted to him in the sum of $2,240, with interest from the 6th of March, 1875, to the 1st day of January, 1877, for money which the defendant paid for Smith, at the former date, as his surety, on account of his promissory note, made to J. W. Leak, to which the defendant was surety, and that he was so indebted to the defendant at and before the time he endorsed the bond, then past due, to the plaintiffs.

This is the substance of what is imperfectly alleged. There is nothing in the answer that indicates or hints at, directly or indirectly, the single bond put in evidence on the trial by the defendant, of Wm. C. Smith, and the defendant for $2,240, dated March 6th, 1874, due at twelve months, and made payable to J. W. Leak.

The memorandum of charge is, " Amt. paid as surety *on note* to J. W. Leak."

What note? Whose note? Taking the whole counter-claim into view—its reference and purpose to charge Thomas J. Smith—the manifest inference is, his note was the one referred to.

The plaintiffs broadly denied the counter-claim, and hence it becomes necessary for the defendant to prove on the trial

the substance of his allegations above mentioned, in that respect.

Did he produce pertinent evidence upon which the jury might have found that Thomas J. Smith was indebted to the defendant as alleged? The Court below held that he did not; that there was a substantial variance between the allegations referred to above and the evidence produced by the defendant to prove it, and therefore the jury could not, as to the "third item" of the bill of particulars, find a verdict in favor of the defendant. The defendant insists that this decision of the Court is erroneous.

We have carefully examined all the evidence bearing upon the question thus presented, and are of opinion that there is no error in the ruling of the Court excepted to, of which the defendant can complain. There was not simply a variance, as the Court held, but accepting the evidence as true, the allegation in its whole scope and meaning as to the "third item" of the counter-claim, was not proved; there was a failure of proof within the meaning of the statute, (*The Code*, §271). Obviously, the single bond put in evidence by the defendant was not that of Thomas J. Smith; he did not sign it, nor did it purport to be his, executed by his agent. Nor was there any evidence of any single bond or note signed by him.

The Court therefore properly told the jury, that there was no evidence that he "signed the note made payable to John W. Leak," as alleged. The power of attorney from Thomas J. Smith to Wm. C. Smith, in evidence, empowered the latter to wind up the business of the former in this State—it did not in terms or effect, authorize him to borrow money, nor did the nature of the business with which he was charged as indicated by the power, imply such authority, nor was there any evidence going to show that this agent had any authority to borrow money for, or on account of his principal.

The defendant, testifying in his own behalf, did not say that he had been surety of Thomas J. Smith, to any note of his whatever, and speaking with special reference to the single bond made to John W. Leak, of William C. Smith and himself, he did not say that it was intended to be that of Thomas J. Smith, or for his benefit, or that the money obtained by it paid his debts: the defendant said simply that " W. C. Smith asked witness (himself) if witness would sign a note with him for some money," and suggested notes and accounts that might indemnify him against loss; but he did not say that the money was to be obtained for Thomas J. Smith, or for his benefit, or that it went to pay debts due from him. The most and the strongest of what he said was, " when the note (the bond) was signed, W. C. Smith got the money, $1,300 or $1,400, in checks on New York, the balance in cash; he said that he was going to pay the debts of the concern; that they were pressing him; it was T. J. Smith's business." This was slight evidence, certainly not sufficient to go to the jury to prove that the money obtained from Leak was obtained for Thomas J. Smith, and went to pay his debts, or in aid of his business matters, especially in the absence of evidence of authority in William C. Smith to borrow money for him. The other evidence, as a whole, had a very slight, if any tendency, to prove that the money was so obtained and so used.

Indeed, taking the whole of the evidence together, it did not prove the allegations of the defendant. It could only create a vague impression that they might possibly have some foundation. It could not in any just and reasonable view of it, warrant a verdict in favor of the defendant as to the matter in question. The Court therefore properly instructed the jury in effect, not to allow the item designated as "third item."

The Court excluded the deposition of C. B. Mebane. What the ground of objection was does not appear, and of course the exception goes for naught.

The defendant objected to the deposition of Thomas J. Smith "on the ground that the testimony was incompetent." What part of, or in what respect, it was incompetent, is not in any way specified, and no error is assigned. It is obvious that such vague and imperfect assignment of error cannot be entertained.

We may say, however, that we have examined the deposition, and it seems to us that the evidence was competent, as tending to prove that Thomas J. Smith was not indebted to the defendant on any account, as alleged by him.

The judgment must be affirmed.

No error.                                     Affirmed.