R. R. PORTER, Adm'r, v. THE WESTERN NORTH CAROLINA RAILROAD COMPANY.

*Issues—General and Special Verdicts—Contributory Negligence.*

1. Where issues are submitted which are not raised by the pleadings, without objection in the Court below, objection cannot be made to them for the first time in this Court, and the findings must stand.

2. Where the jury respond affirmatively or negatively to the issues submitted to them, it is a general verdict although there be several issues; when they state the facts, and leave the Court to apply the law arising upon them, it is a special verdict.

3. In actions for the recovery of money only, or of specific real property, the jury may in their discretion render either a general or special verdict, but in all other cases the Court may direct them to find a special verdict, and it may instruct them, if they find a general verdict, to find upon particular questions of fact, material in the case, but which are not put in issue by the pleadings.

4. Where a servant knows that his co-servant is negligent and reckless, and unfit for his employment, and yet continues in the service of the common master, and is injured by the negligence of such reckless fellow-servant, nothing else appearing, he has contributed to the injury and cannot recover.

5. Where a servant remains in the employment of his master after he knows that a fellow-servant is incompetent, he does not contract by implication to take the risk, but if prevented from recovering on this ground, it will be by reason of contributory negligence.

6. Where the findings on the issues are contradictory, a new trial will be granted.

7. So, where in response to one issue the jury found that there was no contributory negligence, but in response to another, they found that the plaintiff's intestate knew of the reckless character of his fellow-servant by whose negligence the injury occurred, a new trial was granted.

(*Henry* v. *Rich,* 64 N. C., 379; *Miller* v. *Miller,* 89 N. C., 209; *Swann* v. *Waddell,* 91 N. C., 108; *Wright* v. *Cain,* 93 N. C., 296; *Willis* v. v. *Branch,* 94 N. C., 142; *Patton* v. *The Railroad,* 96 N. C., 455; *Smith McGregor,* 96 N. C., 101; *Morrison* v. *Watson,* 95 N. C., 479; *Crutchfield* v. *The Railroad,* 78 N. C., 300; *Johnson* v. *The Railroad,* 81

N. C., 453; *Pleasants* v. *The Railroad*, 95 N. C., 195; *Bank* v. *Alexander*, 84 N. C., 30; *Mitchell* v. *Brown*, 88 N. C., 156; *Hilliard* v. *Outlaw*, 92 N. C., 266; *Turrentine* v. *The Railroad*, 92 N. C., 638; cited and approved).

(*Cowles* v. *The Railroad*, 84 N. C., 311; cited in the dissenting opinion).

CIVIL ACTION, tried before *Avery, Judge*, and a jury, at August Term, 1886, of BUNCOMBE Superior Court.

The following is the single paragraph of the complaint that gives rise to the issues of fact and law that arise in this case.

" 3d. That on or about the 5th day of May, 1883, one Daniel Donavin, the intestate of the plaintiff, was employed by, and in the service of, the defendant company, as a laborer and watchman at the Swannanoa Tunnel on said railroad, in connection with its business of operating said railroad; that while he was so employed, and duly engaged about his business and service as such laborer and watchman so in the service and employ of the defendant company, the defendant company, unskillfully, carelessly, negligently and recklessly, so managed, moved and ran one of its engines, as to strike and run said engine against, upon and over the body of the intestate, and thus instantly to kill him, the said intestate; and that the plaintiff, by reason of such killing of his intestate, has become entitled to recover from the defendant company thirty thousand dollars."

The material parts of the answer are as follows:

" 3d. Defendant admits that Donavin was a watchman in its employment at Swannanoa Tunnel. Defendant denies the rest of allegation No. 3.

Defendant for a further defence, says:

1st. That it is informed and believes, that the deceased came to his death by his own negligence, in not getting out of the way of an engine, and by not being in his proper place when killed ; or,

2d. That if he was killed through negligence at all, it was by the negligence of the engineer running the engine, who was a fellow-servant of the deceased ; or,

3d. That it was from some unknown cause or accident, for which the defendant is not liable."

At the trial, the Court submitted issues to the jury, whereof the following are copies, to which they responded as stated at the end of each :

1st. Was the plaintiff's intestate injured by the unskillful, careless and negligent management of one of the defendant's engines, by the defendant ?

Answer—Yes.

2d. Did plaintiff's intestate contribute to his own injury by his negligence ?

Answer—No.

3d. Was the death of plaintiff's intestate caused by the negligence of Jack Edwards, an engineer and fellow-servant of plaintiff's intestate ?

Answer—Yes.

4th. Did the defendant company retain the said Edwards in its service after the defendant company had knowledge, or by reasonable diligence might have ascertained, that said Edwards was incompetent, inefficient or reckless in running his engine ?

Answer—Yes.

5th. Did the plaintiff's intestate know that said Jack Edwards was incompetent, inefficient or careless in running an engine, and with such knowledge remain in the service of the defendant till he was killed ?

Answer—Yes.

6th. What is plaintiff's damage ?

Answer—Nine thousand five hundred dollars."

The Court instructed the jury on the law and testimony bearing upon each of said issues.

The plaintiff did not except, before or after verdict, to the instructions given or instructions refused. The plaintiff declined after verdict to move for a new trial. After the rendition of the verdict, the plaintiff moved the Court for judgment upon the findings of the jury, on the first, second and sixth issues especially, and upon the whole verdict, in favor of the plaintiff for the sum of nine thousand five hundred dollars, and the costs of the action.

In the instructions given by the Court bearing upon the second issue, and when the attention of the jury was directed to said issue, the Court recapitulated all of the testimony offered by the parties, to show that plaintiff's intestate either did or did not contribute by his own negligence to cause the injury; but no reference was made by the Court to the testimony as bearing upon this question, whether the plaintiff's intestate knew that Edwards was a reckless engineer, and remained in the service of the defendant company after he had such knowledge.

In the instructions given to the jury bearing upon the fifth issue, however, the Court stated to the jury, as counsel on both sides had stated in the argument, that the only testimony bearing upon that issue, was the testimony of the wife of plaintiff's intestate, as to what he said to her about Jack Edwards.

The defendant's counsel contended that there was no conflict between the findings on the second and fifth issues, and if there was any such conflict, the findings on the fifth issue, being a special finding, would control under §410 of *The Code.*

The Court refused the motion for judgment by plaintiff, and rendered judgment for defendant for the costs. The plaintiff excepted to said judgment and to the refusal of his motion for judgment, and appealed.

*Mr. John Devereux, Jr.,* (*Mr. J. H. Merrimon* also filed a brief.) for the plaintiff.

*Mr. Charles M. Busbee,* (*Messrs. D. Schenck* and *Charles Price* also filed a brief,) for the defendant.

MERRIMON, J., (after stating the facts).    It is true, as contended by the counsel of the appellant on the argument here, that the pleadings did not raise the fourth and fifth issues submitted to the jury in this case.    It was therefore irregular to submit them, but it does not appear in the record that the appellant objected to them at the trial, or at all, in the Court below, nor is error assigned as to them, nor can error in such respect be assigned in this Court, as has been decided in many cases.

The verdict, in response to these issues, must be accepted and acted upon, for any proper purpose in connection with the judgment given, or that ought to have been given by the Court.    Improper issues should be objected to in apt time, and if it should turn out that submitting them resulted in prejudice to the party complaining, this would be ground for a new trial.    Issues arise upon the pleadings, and the Court has not authority to submit others that do not so arise in its discretion.    It is a mistaken notion that seems to be entertained by some of the profession, that the statute confers such power.    Generally, however, when issues of fact, not raised by the pleadings, are submitted to the jury without objection, the presumption is, that they were submitted by consent of parties.    *Henry* v. *Rich*, 64 N. C., 379; *Miller* v. *Miller*, 89 N. C., 209; *Swann* v. *Waddell*, 91 N. C., 108; *Wright* v. *Cain*, 93 N. C., 296; *Willis* v. *Branch*, 94 N. C., 142; *Patton* v. *The Railroad*, 96 N. C., 455; *Smith* v. *McGregor*, 96 N. C., 101.

The counsel for the appellee conceding that these issues were not raised by the pleadings, insisted that the statute, (*The Code*, §409,) authorized the Court, in its discretion, to

submit them, and that, although the finding of facts in response to the fifth issue is inconsistent with the general verdict in response to the second issue, the former must prevail, as provided by the statute, (*The Code,* §410,) and therefore, the Court properly gave judgment for the defendant.

This argument, it seems to us, is based upon a misapprehension of the nature, extent and effect of the findings of the jury in response to the several issues submitted, and particularly the second and fifth.

The statute (*The Code,* §408,) prescribes that, "a general verdict is that by which the jury pronounce generally upon all or any of the issues, either in favor of the plaintiff or defendant. A special verdict is that by which the jury find the facts only, leaving the judgment to the Court." This implies that the verdict is general, when the jury, under appropriate instructions from the Court as to the law applicable, simply respond affirmatively or negatively to the issues submitted—that it is special, when it finds the facts in evidence, pertinent to, and bearing upon the issues submitted—when it states the facts, and leaves the Court to apply the law pertinent and arising upon them. *Morrison v. Watson,* 95 N. C., 479.

Ordinarily, the verdict of the jury is general, upon the issues submitted to them, but this is not necessarily so. The statute (*The Code,* §409,) prescribes that, "in every action for the recovery of money only, or specific real property, the jury, in their discretion, may render a general or special verdict. In all other cases, the Court may direct the jury to find a special verdict in writing, upon all or any of the issues; and in all cases, may instruct them, if they render a general verdict, to *find upon particular questions of fact, to be stated in writing,* and may direct a written finding thereon. The special verdict or finding shall be filed with the clerk, and entered upon the minutes."

It thus appears that in certain specified classes of cases, the jury may, *in their discretion,* render a special verdict. In all other cases, the Court may *direct* them to find a special verdict in writing upon *all* or *any* one or more of the issues; and it may instruct them if they render a general verdict, " to find upon *particular questions* of fact, to be stated in writing, and may direct a written finding thereon." The purpose of this provision is, to settle some important, leading *question* of fact, arising in the case, that is not made an issuable fact in the pleadings, but is one which the Court deems material to a just determination of the case. In such case, the fact is found, and the Court will determine its legal bearing and effect.

In the present case, six issues were submitted to the jury. Their verdict upon each was general—a simple affirmative or negative response. The jury did not purport to render, nor did they in effect render a special verdict. Nor did the Court instruct them to find a special verdict in writing, upon all or any of the issues; nor did it instruct them to "find upon particular questions of fact," stated in writing; nor did they make such findings.

All the issues submitted, are supposed to have arisen upon the pleadings, and the verdict as to each is general, and must be so accepted by the Court.

The statute, (*The Code,* §410,) which provides that, "where a special finding of facts shall be inconsistent with the general verdict, the former shall control the latter, and the Court shall give judgment accordingly," does not apply, because, as we have seen, there is no special finding upon a question, or questions of fact, as contemplated by it. The findings are all upon *issues,* and not *questions,* of fact.

If the Court intended, as allowed by the statute, to instruct the jury to find upon "particular questions of fact," embraced by the third, fourth, and fifth issues, it should have stated the questions in writing, and the jury should have

found the facts—many or few—as in case of a special verdict, so that the Court could have determined their legal effect and application, and moreover, so that, if error had been assigned in such respect, this Court could. upon appeal, have corrected any error that might have appeared.

Then, treating the verdict as to all the issues as general, did it warrant the judgment the Court gave in favor of the defendant? We think it did not. Manifestly, the findings upon the first, second and sixth issues, without regard to the findings upon the other issues, entitled the plaintiff to judgment. It appears from these, that the defendant, carelessly, negligently, and tortiously injured the intestate of the plaintiff, as alleged, and that the intestate did not contribute to his own injury by his negligence, and the damages are ascertained.

But the findings upon the third, fourth, and fifth issues, are inconsistent with the findings just referred to, and thus the verdict upon all the issues, as a whole, is rendered not only inconsistent and contradictory, but unintelligible, and no judgment ought to be rendered upon it.

It is first found broadly and without qualification, that there was no contributory negligence on the part of the intestate of the plaintiff, and in response to the fifth issue, in legal effect, that there was such negligence. For if the intestate and engine-man were fellow-servants, as the jury found they were, and the latter was negligent and unfit for the common service, and dangerous in doing such service to his fellow-servants, and the intestate well and clearly knew these facts, and with such knowledge continued in the service of the defendant while the engine-man did likewise, he was thus negligent himself, and when he encountered the injury complained of, occasioned by the negligence of the engine-man, nothing else appearing, by such negligence on his part, he contributed to his own injury. *Crutchfield* v. *The Railroad Company*, 78 N. C., 300; *Johnson* v. *Railroad Company*, 81 N. C.,

453; *Pleasants* v. *Railroad Company*, 95 N. C., 195; Wood on Master and Servant, §§385, 422, 423; 3 Wood Railway Law, §§394, 396; Whitaker's Smith on Neg., note on p. 397.

The fifth issue, and the finding of the jury upon it, is indefinite and unsatisfactory as an ascertainment of contributory negligence. At what time the intestate first knew of the incompetency and dangerous carelessness of the engine-man— the extent of his knowledge in these respects, and how long he had such knowledge before he suffered the injury complained of, do not appear. And the evidence upon which this finding is based, is quite as indefinite and unsatisfactory. Nevertheless, as the issue and the finding of the jury upon it were treated as sufficient, and there was no objection, the verdict must be deemed a finding that there was contributory negligence. So that, there are two contradictory findings. Which is the true one? Which shall the Court accept as true? Why shall it accept one and not the other? Such findings leave the issues of fact undetermined, and it is not the province of the Court, unless by consent, to determine them. The material facts are contradictory, and no judgment can be rendered. In such a case, the Court will direct a new trial. *Bank* v. *Alexander*, 84 N. C., 30; *Mitchell* v. *Brown*, 88 N. C., 156; *Hilliard* v. *Outlaw*, 92 N. C., 266; *Turrentine* v. *The Railroad Company*, Ibid., 638; *Morrison* v. *Watson, supra.*

The learned counsel for the appellee insisted on the argument, that the facts ascertained by the verdict upon the fifth issue, did not, in legal effect, constitute contributory negligence, but was in effect, a finding that the intestate of the plaintiff, "*agreed* with the defendant company to risk the consequences of this dangerous contact and association" with the engine-man.

We cannot accept this view as correct. The law implies that the servant agrees to accept the ordinary risks incident to the business or service which he engages to do, but it does

not imply that he shall or will take upon himself extraordinary hazard, and especially such danger as the employer is bound to prevent and avert by the exercise of reasonable diligence on his part. Generally and ordinarily, the master and servant, in the contract of employment between them, do not contemplate extra hazards and unusual dangers arising in the course of the service to be done, and hence the law does not *imply*, in the absence of express stipulation to that effect, that the contract embraced such hazards. So far as appears, the contract of employment between the intestate of the plaintiff and the defendant was the ordinary one in such cases. The parties did not contemplate extra and unusual hazards, nor such dangers arising from the rash and dangerous acts of the unfit engine-man, nor does the contract embrace them by implication.

The most that can be said in this respect is, that the intestate, by remaining in the defendant's service after he had certain knowledge of the unfitness of his fellow-servant engine-man—the defendant having the like knowledge—assumed the extra hazard as to his fellow-servant, and thereby waived his right to redress against the defendant in case of injury arising to him from that servant's reckless act. But by thus remaining in the defendant's service, he was negligent as to his own safety, and by such negligence contributed to his own injury, in the absence of anything to the contrary, just as certainly as if he had used, in the course of his employment, a defective and dangerous locomotive, or other defective implement, knowing the same to be dangerous and had suffered injury from the same, by reason of such defects.

It was the intestate's duty to avoid such hazard ; he was negligent in failing to do so, and thus unfortunately contributed to the loss of his life.

The verdict and judgment must be set aside, and a new trial had according to law.

To that end, let this opinion be certified to the Superior Court. It is so ordered.

DAVIS, J. I concur in the opinion granting a new trial.

SMITH, C. J., dissenting. As I do not concur with the Court in setting aside the verdict as self-contradictory, but am of opinion that judgment was properly rendered upon it in favor of the defendant, it is necessary for me to state the reasons upon which the dissent is based. Six issues were presented to and passed on by the jury, of which those numbered 2 and 5 are supposed to be in irreconcilable conflict, and to call for a reference to another jury, upon the ground that the intestate's co-operative negligence, denied in the first, is affirmed in the latter finding. I do not so interpret the case.

The finding upon the first three issues, as explained in the third, presents the case in which one servant is injured, in the present instance loses his life, by the negligence and want of due care of another, fellow-servants of the same master, for the consequences of which the authorities are uniform in holding that the common principal is not liable. Such hazards incident to the same, are voluntarily assumed in entering the service under an *implied*, involved in the *actual contract*. Contributory negligence on the part of the injured, is not a material element in the exoneration, for if not present, and the injury proceeds from the sole carelessness of the employé, the result is the same.

To remove these obstacles to a recovery, and to bring home to the defendant its own negligence, the 4th and 5th issues were framed and passed on, from which it appears that the engine-man had before shown his unfitness for the place—indeed a recklessness in conducting his engine, and this was alike known to the deceased and to the company,

and yet the former remained in the service, without complaint made to the employing company.

It is well settled that a railroad company, or any other, employing servants in the different branches of its business, which converge to one end, must provide safe and suitable machinery, and employ competent and fit persons to discharge the various duties required of each for the security of all. This obligation extends to necessary reparations, and to the discharge of employés whose unfitness has been made apparent by their subsequent conduct.

As the employer alone acts in these matters, his duty to those whom he employs, imperatively demands the exercise of proper care in these particulars for the safety of the others, and not less the protection of his own interests. So too, the servants who detect any defects in the machinery, or incompetency in those with whom they associate in the common undertaking, should communicate the fact to the employer, that he may provide a remedy. If, with this information, and without making it known to the employer, any one remains without complaint in the service, it is assumed that he adds the risks from this new source of danger to those which he took upon himself when he entered into the service.

These principles are recognized as governing the relation between the employer and the employed in reference to accidents occasioned by defective machinery, or known incompetent co-employés. "In this country," says Mr. Wharton, "the exception has been still further extended, and we have gone so far as to hold, that a servant does not, by remaining in his master's employ, with knowledge of defects in machinery he is obliged to use, assume the risks attendant on the use of such machinery, if he has notified the employer of such defects, or protested against them in such a way as to induce a confidence that they will be remedied. The only ground on which this exception can be justified is, that in

the ordinary course of events, the employé, supposing that the employer would right matters, would remain in the employer's service, and that it would be reasonable to expect such continuance. But this does not apply to cases where the employé sees that the defect has not been remedied, and yet continues to expose himself to it. In such case, on the principles heretofore announced, the employé's liability in this form of action ceases." Law of Negligence, §221.

The doctrine is thus laid down in Wood's Law of Master and Servant. §379 :

"The fact that an employé has complained of a defect, and believes, or has reason to believe, that the defect will be remedied, *unless a promise to repair is made*, does not of itself entitle him to recover for an injury received from such defect. The real question is, whether the plaintiff was guilty of negligence in performing the service, after knowledge of the defect—no promise to repair it being given—does not operate to relieve him of the imputation of negligence, but may have directly the opposite effect. It is wholly a question of care or negligence, and if the servant knew, or ought to have known the danger, and a person of ordinary prudence would have regarded it as dangerous to remain, he cannot recover, even though he has complained of the defect."

The responsibility for using defective machinery and unfit implements, and for employing an incompetent servant, or retaining him after such incompetency has been shown, is substantially the same.

Our own rulings on this subject are in the same line, and the controlling principle is thus stated by BYNUM, J.: " If the servant remains in the master's employ, with knowledge of defects in machinery he is obliged to deal with in the course of his regular employment, he assumes the risks attendant upon the use of the machinery, unless he has notified the employer of the defects, so that they may be remedied in a reasonable time. But if he sees that the defects have not

been remedied, *yet continues to expose himself to the danger, the employer's liability ceases.    Crutchfield* v. *R. & D. R. R. Co.*, 78 N. C., 302.

So it was subsequenty declared, that " if the servant knows of defects in the machinery, and remains in the service, he cannot recover for injuries caused by such defects, unless he has informed his superior, and the latter fails to remove them."    *Johnson* v. *Railroad*, 81 N. C., 458.

The proposition is stated with some modification by RUF-FIN, J., thus: " In entering the service of the defendant, the plaintiff might be, and is, presumed to understand and take upon himself every risk naturally pertaining to such service, and amongst others, that which may proceed from the possible carelessness of such fellow-servants as he must know from the very nature of the employment, he may be required to associate with in the performance of his duties.    But no such presumption is or should be raised, of his willingness to assume the risk growing out of the possible negligence of one, who while a servant to their common master, stands to himself in the light of a superior, whose commands and directions he is bound to obey."

The plaintiff in this case, was a workman and under the direction and order of the conductor, who was also engineer of the train, and sustained the injury when obeying an order to go upon a certain car and apply the brake, by the bumping of the cars.    *Cowles* v. *Railroad*, 84 N. C., 311.

The plaintiff's intestate was *not employed on the running train and controlled by the engineer*, but was in a distinct and separate service, so that the qualification of the general rule has no application to the present case.

It is true the company had knowledge, or by inquiry might have obtained it, of the inefficiency and incapacity of the engineer, so that it was unnecessary that the deceased should give the information.    It is not for this purpose alone that he should have made complaint, but to show his un-

willingness to be exposed to the new danger from the offi-
cer's reckless conduct, and that it may be removed. The
failure to make complaint, and continuance in the service,.
*after as before knowing of the unfitness*, is an acquiescence in
his retention, and a tacit assumption of the new risk, as of
those personally assumed, incidental to the employment.
As the employé, though unfit in some respects, may possess
other qualifications for the place, rendering his retention,
upon the whole, important to the principal, as also to his
fellow-employés, the company, by keeping him, and the other
servants in their acquiescence in the action of the company,
assent to the risks to property and to person, and thus the
parties stand upon an unchanged footing in respect to pos-
sible accidents from this cause.

In a recent work, this enunciation of the rule, with the
reasons for it, is made: " If the servant, when the defect or
danger is brought to his knowledge—when he discovers that
the machinery, buildings, premises, tools or any other instru-
mentalities of his labor, are unsafe or unfit, or that a *fellow-
servant is careless or incompetent—continues in the employment
without protest or complaint, he is deemed to assume the risks of
such danger, and to waive any claim upon his master for dam-
ages in case of injury.*"   Beach Cont. Neg., §140.

In support of the proposition, a large array of cases decided
in this country and in England is given in the foot note,
and among them the case of *Cowles* v. *Railroad, supra.*

" Failure to speak promptly," the author proceeds to say,.
" is such contributory negligence as will bar a recovery from
the master, in case he is injured by the defect in the ma-
chinery, or the unfitness of the servant.   *   *   *   But if,.
when the master is notified of the defect in the machinery,
or of the incompetence in the servant, he promises to rem-
edy it within a reasonable time," (or, we may add, gives
reasons for the servant so to infer,) " the servant will not be

presumed to have consented to it, or to have waived his rights by remaining for such reasonable time in the service."

Now, the facts are, as found by the jury, that the intestate was aware, and as set out in the case on appeal, communicated to his wife, the fact of the reckless character of the engineer, and that his only apprehension of danger when in the tunnel, was from him. With this information he acquiesces in the situation, and continues in his employment until he loses his life.

The verdict is, that the intestate did not by his own negligence contribute to or directly bring about the disaster to himself, and this is not inconsistent with the further finding, that he remained in the company's service, with full knowledge of the engineer's unfitness, and thus waived any claim for damages resulting from such unfitness. Sometimes, as is said in the opinion, this conduct on the part of the servant, continuing in the service after such discovery, is designated as contributory negligence, though he may have exercised every possible care and attention to his own safety upon the particular occasion; but it seems to me the true ground upon which to place the exemption from liability of the employer, is that of the employé's voluntary exposure of himself to this new source of danger, and his assumption of the risks incident to it.

In a remote degree, negligence may be imputed to the servant in not quitting the service when he knows of the retention of an incompetent fellow-servant or associate, but it is not easy to see how this can be deemed contributory to an accident brought about by no agency of his own, and wholly the fault of another. Such is the sense in which the jury must be understood in finding that there was no contributory negligence on the part of the intestate.

I think, therefore, the judgment ought to be affirmed.

Error.                                        New trial.