MARGARET A. JOHNSON, Administratrix of D. A. Johnson, et al v. ELGATE TOWNSEND.

(Decided March 29, 1898.)

*Action on Note—Trial—Contradictory Verdict— Judgment.*

In a trial of an action on a note the jury found in response to one issue that the note was executed in good faith for the purchase of land conveyed by the payees to the maker, and, in response to another, that the note was not executed in good faith and for the price of the land but in pursuance of a fraudulent scheme, in which all parties participated, to hinder, delay and defraud the creditors of one of the payees. *Held*, that the verdict was contradictory and no judgment could be rendered thereon.

CIVIL ACTION tried before *Coble, J.*, and a jury at May Term, 1897, of ROBESON Superior Court. The facts are stated in the opinion. Upon the verdict his Honor rendered judgment for the defendants, dismissing the action, and plaintiffs appealed.

*Messrs. French & Norment* and *MacRae & Day* for plaintiffs (appellants).

*Messrs. McNeill & McLean* and *G. B. Patterson* for defendant.

MONTGOMERY, J.: This action was commenced by Margaret Johnson, administratrix of D. A. Johnson, deceased, and Margaret Johnson and Mary Johnson,

sisters of the intestate, to recover the amount alleged to be due on a promissory note in the sum of $1,215, executed by the defendant to the intestate and the plaintiffs. The defendant admitted the execution of the note but averred that it was void and of no effect because it was made under a fraudulent agreement between himself and the payees to enable them to defeat and defraud the creditors of the payees. The defendant's story of the transaction in substance is: That the two sisters — old persons — the plaintiffs, and the brother, D. A. Johnson, now deceased, became indebted to Rowland & McLean, a firm of lawyers, for professional services rendered to them, and that they were being pressed for the debt; that the plaintiffs asked the defendant if they should to make him a deed to the tract of land they owned (then worth, according to the evidence of some of the witnesses, about $4,000) would he, when they requested, reconvey to them; that he agreed to do so; that one Buie was called in (all of the parties being present) "to fix up the papers", who, in drawing the deed, suggested that they take a note and recite a consideration in the deed; that the plaintiffs and their brother all said they wanted to make the deed to keep Proctor from getting a judgment against them for Rowland & McLean; that nothing was said about the note until Buie mentioned it; that he went after Buie to draw the deed; that he knew when the deed was drawn and note executed they were made to defraud Rowland & McLean; that he has never paid anything on the note; that it was never intended he should pay anything on it, and that he has refused to reconvey the land unless the plaintiffs would pay him some debt which he alleges they owe him. It is admitted that the defendant, through legal proceedings of

which we have no particulars, is in possession of the land. Upon this state of facts, as related by the defendant, it is amusing (if it was not so serious a matter) to quote one of the defendant's prayers for instructions. He requested his Honor to charge that "It is a maxim of our law that no court will lend its aid to a person who founds his cause of action on an illegal and immoral act, its object being to leave the parties exactly where the fraud and immorality placed them, not extricating or aiding either, in order to discourage dishonesty and promote good faith in business dealings." A writer of fiction could hardly imagine such a rare and racy character as the defendant is, and the "setting", too, is so unique. But still it is a wonder that such a man can flourish in practical life and in a Christian age.

Among the issues submitted were:

1. Was the note executed by defendant to plaintiffs given for the purchase money of the land described in the complaint?

3. Was said note given by defendant to M. A., D. A. and M. J. Johnson in pursuance of a fraudulent purpose to hinder, delay and defraud creditors of D. A. Johnson?

On the first issue his Honor instructed the jury that, if the plaintiff had shown the note was given for the purchase money of the land, they should answer the issue "yes"; if they had failed to show that fact, they should answer the issue "no".

He then laid before them the contention of the plaintiffs, which was that the transaction was *bona fide*; that they sold the land to the defendant and· that he was to pay them for it the sum of $1,215, and that the note was given for that amount and for ·that consideration; that the defendant was to maintain the plaintiffs dur-

ing their lives; that their maintenance was to be credited upon the note, and that there was no other purpose connected with the transaction than the sale of the land to the defendant and the binding of the defendant by the note to pay the purchase money, and therefore the plaintiffs contended that the jury should answer the first issue "Yes". Then his Honor set out the defendant's contention, which was, that the note was not given for the purchase money of the land; that the whole transaction was in pursuance of a scheme on the part of the plaintiffs to hinder, delay and defraud their creditors, and that the defendant was a party to the scheme; that the note was executed only to give color to the transaction; that it was never intended the note should be paid, but that it was to be surrendered to the defendant when the land should be reconveyed to the plaintiffs. His Honor then said, "This question is for the jury to decide, whether the note was given for the purchase money of the said land, or whether it was given for the purpose of giving color to a fraudulent transaction in pursuance of a scheme on the part of the plaintiffs in which the defendant assisted to defraud the creditors of the plaintiffs". The jury responded "yes", that is, that the note was given according to the contention of the plaintiffs in good faith for the purchase money of the land and to bind the defendant. On the third issue—as to whether the note was given by the defendant to the plaintiffs in pursuance of a fraudulent purpose to hinder, delay and defraud creditors of D. A. Johnson—the Court instructed the jury that the burden of proof was on the defendant, that he must show by the greater weight of evidence that the note was given in pursuance of the fraudulent purpose to defraud the creditors of D. A. Johnson.

The Court called their attention to the defendant's contention, which was, that the note was given in pursuance of a scheme to defeat Johnson's creditors; that Johnson was indebted to Rowland & McLean and others, and that the note was given to cheat and defraud Rowland & McLean, and therefore that the jury should answer the third issue "Yes." The Court also set out the plaintiff's contention, which was, that D. A. Johnson did not owe Rowland & McLean anything, and that if he did the deed and note were not · executed to defraud them; that the transaction was in good faith; that the land was conveyed to the defendant for $1,215; that the defendant was to support the plaintiffs during the lives of the plaintiffs; that the cost of their maintenance was to be credited on the note, and that therefore the jury should answer the issue "No." The jury answered the issue "Yes," that is, that the note was executed not in good faith and for the purchase money of the land, and that the defendant should be bound for its payment, but that it was given in pursuance of a scheme to defraud and cheat the creditors of D. A. Johnson.

It is plainly to be seen from this review of the case that the verdict is not only inconsistent but that it is contradictory. The response of the jury to the first issue was that the note was executed in good faith for the purchase money of the land, and with no covinous purpose. The response to the third issue was that the note was executed not in good faith and for the purchase money of the land, but in pursuance of a fraudulent scheme, in which all the parties participated to hinder, delay and defraud the creditors of D. A. Johnson. No judgment ought to have been rendered on the verdict. *Mitchell* v. *Brown,* 88 N. C., 156; *Porter* v. *Railroad,* 97 N. C., 66.

New trial.