J. V. ERSKINE, M. A. ERSKINE AND J. M. ERSKINE, INDIVIDUALLY AND AS PARTNERS, DOING BUSINESS AS ERSKINE MOTORS COMPANY, AND ERSKINE MOTORS COMPANY, A CORPORATION, v. CHEVROLET MOTOR COMPANY AND CHEVROLET MOTOR COMPANY OF ATLANTA.

(Filed 31 May, 1924.)

1. **Contracts—Vendor and Purchaser—Principal and Agent—Issues—Appeal and Error.**

    Where the pleadings and evidence raise a question of fact necessary to the complete termination of the controversy, the issue so presented and aptly tendered may be insisted upon by a party, and its refusal by the trial judge is reversible error.

2. **Same — Automobiles — Local Territory — Pleadings — Evidence — Questions for Jury.**

    Where a manufacturing company of automobiles has contracted to place its local agency for exclusive sale with the plaintiff in the action at two towns in adjoining territory, and has breached its contract as to one of them, and the pleadings and evidence tend to show that it was necessary for the plaintiff to have the agency in both places to obtain the benefits under his contract, a material and necessary issue to the determination of the controversy is thereby raised for the determination of the jury.

APPEAL by defendant from *Ray, J.,* at March Term, 1924, of BUN-
COMBE.

This is a civil action.

*Mark W. Brown for plaintiffs.*
*Merrimon, Adams & Johnston and Frank A. Gaynor for defendants.*

CLARKSON, J. This case has been here twice before. The first time
on the right of removal to the Federal Court, 180 N. C., 619. The
second time the judgment of nonsuit in the court below was reversed,
185 N. C., 479. It is with reluctance that we feel compelled to grant
a new trial in the present case.

It is alleged by plaintiff that:

"On or about 1 December, 1919, the plaintiffs, after considerable
negotiations with the defendants, entered into contracts by which plain-
tiffs became the representatives of the defendants at Asheville and Hen-
dersonville for the sale of Chevrolet automobiles, motor trucks, parts,
accessories and supplies, and it was at that time understood and agreed
that plaintiffs would handle said automobiles, motor trucks, parts, acces-
sories and supplies at Hendersonville for the reason that plaintiffs were
to handle the same automobiles, motor trucks, parts, accessories and
supplies at Asheville, said Hendersonville representation being a part
of one and the same business to be conducted by plaintiffs at both places,
and under the names aforesaid; and pursuant to said arrangement
plaintiffs and defendants entered into articles of agreement marked
Exhibits 'A' and 'B' respectively.

"That pursuant to said articles of agreement marked 'A,' the plain-
tiffs gave and the defendants accepted 'Shipping Order' for delivery
at Asheville of one hundred and fifty-two (152) Chevrolet automobiles
and motor trucks, as will better appear by reference to said 'Shipping
Order,' marked Exhibit 'C,' the same being subject to the terms and
conditions of the price list furnished by the defendants to plaintiffs.

"That pursuant to said articles of agreement marked Exhibit 'B,' the
plaintiffs gave and the defendants accepted 'Shipping Order' for the
delivery at Hendersonville of fifty-five (55) Chevrolet automobiles and
motor trucks, as will better appear by reference to said 'Shipping
Order,' marked Exhibit 'D,' the same being subject to the terms and
conditions of the price list furnished by the defendants to plaintiffs.

"That the plaintiff went to great expense in making preparations to
handle said Chevrolet automobiles, motor trucks, parts, accessories and
supplies after said contracts had been entered into between plaintiffs
and defendants as aforesaid; and while plaintiffs were engaged in
advertising said automobiles and motor trucks in the counties of Bun-
combe, Madison, Yancey and Henderson, as provided in said contracts,

plaintiffs were made aware that efforts were being made to induce the defendants to cancel said contracts with plaintiffs and said shipping orders which defendants had accepted from plaintiffs, and plaintiffs forthwith notified defendants that they had been put and were being put to great expense, both in time and money, in furtherance of their business of selling Chevrolet automobiles and motor trucks in said territory, and that they would suffer great loss and damage should said contracts and shipping orders be canceled, and that they would not continue as representatives of defendants aforesaid if there was any probability of the cancellation of said contracts and said shipping orders, and defendants thereupon assured and agreed with the plaintiffs that said contracts and said shipping orders would not be canceled, and that plaintiffs would be continued as representatives of defendants in said territory, and that said shipping orders covering said Chevrolet automobiles and motor trucks for the months of January, February, March, April, May, June and July, 1920, should and would be filled, and that said automobiles and motor trucks therein specified should and would be delivered by defendants to plaintiffs promptly, so as to enable plaintiffs to sell said Chevrolet automobiles and motor trucks during the spring and summer of 1920; and as a result of said assurances and agreements plaintiffs continued to use both time and money in promoting their said business and in advertising, selling, and offering for sale defendants' said automobiles and motor trucks, as aforesaid, as defendants well knew."

These allegations are all denied by defendants.

When this case was here on the question of nonsuit (185 N. C., 489) it was held: "If the original contracts (Exhibits 'A' and 'B') were not binding, and the oral agreement of 18 December, 1919, was the first and only contract, or if Exhibits 'A' and 'B' did constitute obligations which were modified and made certain by the subsequent oral agreement of 18 December, 1919, is not material. The defendants are bound by the subsequent oral agreement of their general sales agent, whereby defendants modified the original contracts (Exhibits 'A' and 'B') and bound themselves to deliver the particular automobiles specified in the shipping orders, and at the time therein stated. *Lane v. Engineering Co.,* 183 N. C., 307."

It will be noted that there were two separate and distinct contracts, Exhibit "A" relating to delivery at Asheville and Exhibit "B" relating to delivery at Hendersonville. Exhibit "A," relating to the Asheville agency, was signed "Erskine Motors Co., per M. A. Erskine, Prest." This contract called for the delivery of 152 Chevrolet automobiles, etc., at Asheville, N. C. Exhibit "B," relating to the Hendersonville agency, was signed "Hendersonville Motors Co., by M. A. Erskine, Prest." This

contract called for the delivery of 55 Chevrolet automobiles, etc., at Hendersonville.

It was contended by plaintiffs (185 N. C., 486) that "On 21 January, 1920, the defendants 'arbitrarily and without reason canceled their verbal agreements,' and refused to deliver the automobiles covered by the shipping orders, and on 2 February, 1920, the notice of cancellation was confirmed. The plaintiffs replied that they were surprised and disappointed at the action of the defendants, and called attention to the fact that plaintiffs could not satisfactorily handle defendants' automobiles at Hendersonville if they were deprived of the agency at Asheville, it being fully understood that the Asheville and Hendersonville agency were to be carried on together, and that the Hendersonville agency was not profitable without the Asheville agency. Thereupon defendants canceled their verbal and written agreements relating to the Hendersonville agency."

The defendants contend that, admitting the oral agreement to be true as to the Asheville agency, and it was canceled in violation of the alleged oral modification, that the Hendersonville contract should be entirely eliminated from consideration. "That none of the plaintiffs in this case have any standing in this suit in so far as the Hendersonville agreement is concerned; that it was an entirely separate and independent agreement; that no reference was made to it, or about it, in any oral agreement made by Herold; that such oral agreement, if made, related solely to the Asheville agreement if violated, was violated by the Hendersonville Motors Company itself in its refusal to perform, and no damage whatever was sustained, unless by the defendants, by such refusal. The Hendersonville Motors Company agreed to the diversion of the cars there, contended that the dealings in regard thereto should be liquidated and settled, their money deposit was returned, and all matters relating to the Hendersonville agreement were settled. Plaintiffs had done absolutely nothing in the way of performance there."

On the other hand, plaintiffs contend that these agencies were to be handled together. On 21 January, 1920, M. J. Herold, sales manager for defendants, sent the following letter to M. A. Erskine, Erskine Motors Company, Asheville, N. C.:

"DEAR SIR:—This is to inform you that we are today canceling your selling memorandum with us, to take effect immediately, in accordance with clause No. 8 of our selling memorandum.

"Therefore we are instructing our accounting department to return to you your deposit, less any amount that may be due the Chevrolet Motors Company of Atlanta. We have instructed our Mr. Jas. E. Green, factory representative for your territory, to this effect.

"Wishing you every success in the future, we remain,

Yours very truly."

This letter was in reference to canceling contract, Exhibit "A," relating to Asheville agency.

On 24 January, 1920, the Erskine Motors Company and Hendersonville Motors Company sent the following telegram to Chevrolet Motors Company, Atlanta, Ga.:

"We are surprised and disappointed to learn that you will not comply with your agreement with us for the delivery of Chevrolet automobiles in 1920. There is a carload of automobiles at Hendersonville consigned to us, and would like to know if the agency there is also to be canceled. We cannot satisfactorily handle Chevrolet automobiles at Hendersonville without handling same cars at Asheville."

Several letters and telegrams passed.

Assignments of error Nos. 11 and 12 are to allowing the questions and answers of M. A. Erskine after the correspondence by telegrams and letters were introduced.

"Q. You speak in these letters and telegrams about handling these two agencies together. What understanding, if any, did you have with the defendants, or either of them, as to the handling of these two propositions? A. Our understanding with them was that we were to handle them together.

"Q. Who was that with? A. Mr. Stocking, the factory representative. A specific arrangement was made to handle them together, but we called the one in Hendersonville the Hendersonville Motors Company and the other in Asheville the Erskine Motors Company, for the simple and sole reason that they objected to giving so much territory to one concern.

"Q. What was the agreement? A. That was the agreement."

On cross-examination, M. A. Erskine said:

"When Stocking came here I knew he was simply a traveling man; I didn't know what he could do; I knew he was the factory representative of the Chevrolet Motor Company; the extent of his authority I didn't know. He told me he was traveling from Atlanta, and he said he could not make any contracts with us. I don't know that he said that definitely, and I knew he couldn't make any contract. . . . We refused to take the cars at Hendersonville after the Asheville contract was canceled. We had eleven cars here, and there was good money in handling them; had five at Hendersonville, but it would not have been profitable in Hendersonville after the Asheville contract was canceled; we could have gotten that carload at Hendersonville, but refused to take them.

"Q. And you refused to take them? A. Yes. After the contract here we could not have advertised them. How could we sell them without advertising them, and another agent in town? We could not sell them

unless we were the agents. We had eleven here and sold them all, and we sold them after they had another agency here, and if we had taken the five cars at Hendersonville we could have brought them here and sold them too.

"Q. And you agreed that they could divert them? A. Yes, sir, because we could not handle them profitably without the Asheville contract.

"Q. And you were waiting damages for those you refused to take? A. Yes, sir."

With the controversy over the Hendersonville contract the defendant in apt time tendered certain issue which was refused, to which exception was taken—assignment of error No. 34. The issue tendered was as follows:

"Did the plaintiffs, doing business as Hendersonville Motors Company, refuse to accept cars shipped under Exhibits B and D, and agree to their diversion, and refuse to carry out the Hendersonville contract, Exhibits B and D?"

We suggest that the word "wrongfully" should be added before the word "refuse" in the issue, upon another trial.

It may not be amiss to call attention to what was said by *Stacy, J.,* in *Mills v. McRae, ante,* at p. 709: "Nevertheless, it is a sound principle of law, and certainly approved in morals, that one who is injured in his person or property by the wrongful or negligent act of another, whether arising *ex delicto* or *ex contractu,* is required to protect himself from loss, if he can do so with reasonable exertion or at trifling expense; and ordinarily he will be allowed to recover from the delinquent party only such damages as he could not, with reasonable effort, have avoided."

We think from the entire evidence in the case, the probative force is for the jury, that this was a material and necessary issue to properly present the case to the jury, and the refusal was error.

In *Davidson v. Gifford,* 100 N. C., 22, it is said: "The material issues of fact raised by the pleadings must be submitted to the jury unless, in some way to be seen by the court, the right of a party in this respect shall be waived. This is essential to a proper determination of the action, particularly in respect to the matters of fact therein. *Porter v. R. R.,* 97 N. C., 66. When the pleadings are so framed and directed as to present the case, on the part of the plaintiff or the defendant, in more than one aspect as to the evidence that may be produced on either side, the issues of fact should not be so framed—narrowed in their scope and application—as to exclude any relative pertinent evidence, affecting the merits of the cause of action or the defense alleged; they should be so shaped as to embrace the whole—not simply a part—of the material

allegations controverted, and put at issue by the pleadings. While, perhaps, it may, in some cases, be convenient to submit issues incident and subordinate to and embraced by the principal ones raised, the latter, as we have already said, should always be submitted to the jury, unless they shall be waived, because the trial of them is necessary to settle and conclude all the material controverted allegations of the pleadings; and this may be insisted upon, as of right, by either party to the action. *Henry v. Rich,* 64 N. C., 379; *McElwee v. Blackwell,* 82 N. C., 345; *Porter v. R. R.,* 97 N. C., 66, and the cases cited." *Paper Co. v. Chronicle,* 115 N. C., 149.

In *Mann v. Archbell,* 186 N. C., 74, it is said: "Issues are sufficient when they present to the jury proper inquiries as to all the essential matters or determinative facts in dispute. *Power Co. v. Power Co.,* 171 N. C., 248; *Carr v. Alexander,* 169 N. C., 665; *Roberts v. Baldwin,* 155 N. C., 276." *Irvin v. Jenkins,* 186 N. C., 752.

This material issue of fact was raised by the pleading in the instant case. It was insisted upon as of right by the defendant. It related to a separate contract, and the refusal to submit this issue was, in our opinion, prejudicial and reversible error. We do not think the fourth issue cures the error in not submitting the issue requested.

The record presents 57 assignments of error. As the case goes back for a new trial, we will not consider any other assignments of error. For the reasons given there must be a

New trial.