JAMES B. ALLEN v. THOMAS O. SALLINGER.

*Petition to Rehear—Practice—Contradictory Verdict.*

Where the plaintiff, in an action to recover land, demands judgment in his complaint for a tract containing twenty-five acres, and the following issue is submitted to the jury: "Is plaintiff the owner of the land described in the complaint?" to which the jury respond, "Yes; one-seventh of the Sandy Bottom tract—160 acres": *Held,* that the verdict is contradictory and a new trial will be ordered.

(CLARK, J., dissenting).

Petition to Rehear by plaintiff.   This case was decided at February Term, 1889.   (See 103 N. C., 14).

*Mr. James E. Moore* (by brief), for plaintiff.
*Mr. A. O. Gaylord* (by brief), for defendant.

AVERY, J.: This is a petition by the plaintiff to rehear and affirm the judgment below in its original form, instead of directing that it be should be so modified as to order a writ commanding the Sheriff to put the plaintiff into possession of one undivided seventh of the land in dispute as a tenant in

common. The plaintiff says, in substance, in his petition, that if this Court will not affirm the judgment simply, then he prefers to join the defendant and ask a *venire de novo*, on the ground that the verdict is contradictory.

The first issue with the response to it was as follows: "Is plaintiff the owner of the land described in the complaint? Answer. Yes; one-seventh of the Sandy Bottom tract—160 acres."

The plaintiff claims and demands judgment in his complaint as sole owner of a tract containing twenty-five acres.

In stating the case on appeal, his Honor says: "On the trial, it was agreed that one Ezekiel Leary had originally owned the land. The plaintiff offered evidence tending to show that Emanuel Leary was a son and heir of Ezekiel Leary, and then offered a deed from Emanuel Leary to Bradford Allen (the father of the plaintiff), who had six other children, his heirs." So far, it does not appear what land was covered by the deed to Bradford, the father of the plaintiff, who, with six other children, inherited his land.

The statement of the case then set forth that "there was evidence tending to show the location of the land *described in the deed to Bradford Allen, and tending to show that it was known as the Sandy Bottom tract of 160 acres.*" The second stage of the statement, therefore, brings us one step further, by testimony tending to show not only that the plaintiff was one of seven children, but that the deed to Bradford Allen (we must infer is the one from Emanuel Leary) could be so located as to cover a tract of land containing one hundred and sixty acres, and known as the Sandy Bottom tract, thus tracing, if the evidence is believed, the title to one undivided seventh of said Sandy Bottom tract to the plaintiff, as one of the seven heirs at law of his father, Bradford Allen, from Ezekiel Leary, the admitted common source of title, through Emanuel. "There was no evidence," as the Judge informs us, "that there was any judicial pro-

ceeding for partition of the lands of Ezekiel Leary." This does not appear to be material, unless it was intended to give the name of Bradford Allen, instead of that of Ezekiel; but whether that mistake was made, or not, there is nothing in the case to show how the plaintiff ever acquired in severalty any particular part of the 160-acre Sandy Bottom tract that Ezekiel conveyed to his father.

The only other statements of testimony that come up are in the following language (being transposed out of its order without affecting its meaning), viz.: "There was also evidence tending to show possession of Bradford Allen, and those claiming under him, for forty years, of the land in controversy. There were many deeds offered by defendant (none by the plaintiff) from heirs of Ezekiel Leary and others, which defendant insisted covered the land in controversy and offered evidence to show it."

When a plaintiff in an action for possession of land is said to have offered testimony tending to show a possession for forty years, the irresistible inference is that the possession must have been under the deeds he has introduced as evidence of title, and that he intended to use them as color. In this particular case there was no deed located, so far as we know, except the one showing title in Bradford Allen, the plaintiff's father. It was natural, therefore, that the Court should infer, on the former hearing here, that the trespass of the defendant was shown to be on the 160-acre Sandy Bottom tract. That view was strengthened by the instruction given by the Court below upon the law governing adverse possession, and especially in cases where the title deeds of the parties to the controversy lapped each upon the other.

We must remember always that the expression used, "the land in controversy," does not necessarily mean "the land described in the complaint," and if this distinction is well taken, there is not a word in the statement of case on appeal

to show that the plaintiff offered any testimony tending to locate twenty-five acres of land described in the complaint. It is not at all unusual for a plaintiff, in actions of this nature, to declare for and describe a boundary containing thousands of acres, when, in fact, the controversy is confined to one or two hundred acres (*vide Dugger* v. *McKesson,* 100 N. C., 1). In such cases the real subject of dispute may be ascertained by a demand for, and the filing of, a bill of particulars, or by directing a verdict that shall specify the limits of the land recovered.

This Court, on the former hearing, did not advert to the fact that the plaintiff had declared for a twenty-five-acre tract, and that its metes and bounds would not, therefore, fit the Sandy Bottom tract of 160 acres; but, acting upon the natural idea that when the statement of the Judge informed us that the plaintiff had offered testimony tending to trace the title of the Sandy Bottom tract to his father, and to show that he was one of seven heirs of Bradford Allen, we inferred that the findings in response to the verdict might be reconciled by treating the "one-seventh of the Sandy Bottom tract" as the one-seventh of the land described in the complaint. The petitioner now admits that there are two responses to the first issue that do not mean the same thing, and upon which a judgment may issue either for a writ of possession for twenty-five acres described in the complaint, or for the one undivided seventh of the Sandy Bottom tract. When the defendant insisted upon a new trial because of that contradiction on the former hearing, that being the only ground of defendant's appeal, the plaintiff resisted. He now insists that when we have two findings—one predicated on the proof offered, and the other in harmony with the pleadings—we shall treat the former as surplusage, and render judgment with a contradictory finding of facts as a basis for it.

·According to the statement of case on appeal, the plaintiff made a *prima facie* showing of title only to one undivided seventh of the Sandy Bottom tract, and, if his petition should receive a favorable hearing, it means that a party who brings an action for possession may claim sole seizin and declare for a particular one-hundred-acre tract of land, show in himself title to one undivided tenth of a tract containing one thousand acres, and the Court will make the partition for him after verdict and assume that the specific tract declared for was his share in severalty of the larger body.

· Without any information as to how he proposes to point out the location of the twenty-acre tract described in the complaint, and to show that the defendant was a trespasser on it when the action was brought, the plaintiff's attorney now insists in his brief that while the deed to Bradford Allen "*may have been ineffectual to convey* more than the one-seventh that descended to Emanuel Leary from his father Ezekiel (though it does not appear that Ezekiel was one of seven heirs), still it was color of title under which possession would ripen to the twenty-five-acre tract." If that were true, still the difficulty grows out of another fact that Bradford Allen, as well as Ezekiel, had seven children, and the plaintiff offered no evidence to show title except by descent *as one of Bradford's seven heirs to one-seventh of the Sandy* Bottom tract. The counsel does not insist that the plaintiff has shown the twenty-five acres, by proving the metes and bounds of a deed exhibited in evidence, to be within the limits of the one-hundred and-sixty-acre tract, but relies upon an alleged admission made in the brief and argument, submitted since the last hearing by defendant's counsel, to show that the tract described in the complaint was really a part of the Sandy Bottom tract, when the original appeal rests solely on the ground that the verdict was contradictory because that very fact did not appear.

105—22

The plaintiff does not set forth in his complaint that he is suing for himself and six other heirs at law of Bradford Allen, but claims sole seizin, as he does not sue for his co-tenants; and the law, as expounded by this Court, limits his recovery to the undivided interest in the land for which he shows title and demands judgment. If he offers only evidence to establish title to such interest in one tract, and declares in his complaint for a different tract, there is fatal variance between the allegation and proof.

The learned Judge who tried the cause below very properly did not treat "the land in controversy" and "the land described in the complaint," as convertible terms. He understood, evidently, that the land really in dispute was some border land where the title deeds of the parties located, according to the contention of the parties respectively, would lap upon each other.

We append so much of the charge as is sent up, together with the exception to the judgment, as every other material portion of the case on appeal has already been set forth.

The instructions given presented every aspect of the case arising on the volume of evidence, oral and documentary. The only error alleged was that the Court had instructed the jury that if the plaintiff, and those under whom he claimed, held possession of part of the land embraced in his deed for more than seven years, openly, continuously and adversely, it would ripen his title to all the land embraced in his deed, which was not occupied by anyone else, unless there was a lapse; if there was a lappse, and neither party was in possession of the lappage, as to that part embraced in both deeds, the latter title would prevail. The motion for new trial was overruled. Then the defendant objected that the answer of the jury was not responsive to the issues, and was vague and indefinite. The Court, being of opinion that the answer of the jury was sufficient, gave judgment for the plaintiff, and the defendant appealed.

So that we would naturally infer, from the facts before us, that the real controversy was narrowed down to a very small corner of the one-hundred-and-sixty-acre tract, where the defendant trespassed and tried to show title derived from Ezekiel Leary. It is possible that the plaintiff did offer evidence tending to trace the title to the specific twenty-five acres to himself, but it does not appear, except from his petition, and we cannot assume it to be true. It followed, therefore, that the plaintiff is not entitled to judgment for a writ of possession for the (one-hundred-and-sixty-acre) Sandy Bottom tract, because he did not allege that he had title to it, while he cannot recover the twenty-five-acre tract, because he failed to prove title to it. We cannot, therefore, say that the contention of the defendant on the former hearing was unreasonable, when he insisted that, according to the statement, one of the verdicts of the jury was based upon allegation without proof, and was irreconcilably in conflict with the other.

In the case of *Mitchell* v. *Brown*, 88 N. C., 156, the jury found, in response to a first issue, "Yes," which meant that the plaintiff was the owner of the land described in the complaint, but the response to a subsequent issue being contradictory, a new trial was granted. Where the findings of a jury are apparently repugnant in any material respect, so that the Court cannot safely proceed to judgment and see it is unmistakably that to which the verdict establishes a right, a new trial must be granted. *Porter* v. *Railroad*, 97 N. C., 66; *Smith* v *Fite*, 98 N. C., 517; *Morrison* v. *Watson*, 95 N. C., 479; *Turrentine* v. *Railroad*, 92 N. C., 638. The rule generally laid down is, that an inconsistent verdict, or one that, in connection with the pleadings, requires explanation to make it harmonize completely with the pleadings and evidence and support a judgment, will be set aside, if it is too late to have it reformed by the jury. *Clough* v. *Clough*, 6 Foster (N. H.), 24; Hilliard on Mistrial, § 29;

2 Waterman & G. on New Trial, p 37; *Walpon* v. *Eysler*, 7 Watts (Penn.), 38; *Hyatt* v. *Railroad*, 6 Hun. (N. Y.), 306.

The plaintiff should have asked the Judge below to have the verdict reformed by the jury, so as to elicit an unqualified answer to the question involved in the first issue. In failing to do so, he has placed himself in such a position that he must accept the alternative prayer of his petition and join the defendant in asking a *venire de novo*. We accordingly grant the prayer of the petitioner in that respect, by ordering a *venire de novo*.

*Venire de novo.*

CLARK, J.—dissenting: This action is for the recovery of twenty-five acres of land, specifically described in the complaint by metes and bounds. The complaint avers that the plaintiff is the owner and entitled to possession thereof, and that defendant is wrongfully in possession. The answer denies these averments, and further denies that there is any such land in the county as that described in the complaint.

The following issue was submitted to the jury: "Is the plaintiff the owner of the land described in the complaint and entitled to possession thereof?" To which the jury responded, "Yes; one-seventh of the Sandy Bottom tract, 160 acres." And the Court below gave the plaintiff judgment for the twenty-five acres described in the complaint.

When this case was here before (103 N. C., 14), the Court construed that the plaintiff was entitled to an undivided one-seventh of the 25 acres. This is now conceded to have been an inadvertence. as the effect was to give the defendant six-sevenths of 25 acres described in the complaint, when the jury found that the plaintiff was the owner of the whole, and to give plaintiff one-seventh of 25 acres, when the verdict gave him land which it described as one-seventh of 160 acres, thus giving plaintiff one-forty-ninth instead of one-seventh of 160 acres. This inadvertence resulted from treat-

ing the verdict as necessarily for an *undivided* one-seventh, and as if plaintiff were suing as a tenant in common to be let into possession with his co-tenants.

The verdict was evidently for " the land described in the complaint" It says so, and the superadded description of it as one-seventh of the Sandy Bottom tract is doubtless caused by the denial in the answer that there was any such land in the county. There seems no confusion in the verdict in this view, and the learned Judge who tried the cause, and who comprehended all the points in controversy, must have understood there was none, or he would not have received the verdict in that shape. A consideration of the evidence will sustain this view, which is so entirely in accordance with the pleadings, the issue, and the judgment The case on appeal states: "On the trial it was agreed that one Ezekiel Leary had originally owned the land. The plaintiff offered evidence tending to show that Emanuel Leary was son and heir of Ezekiel Leary, and then offered a deed from Emanuel Leary to Bradford Allen, dated· in 1842 The plaintiff then offered evidence that he was son and heir of Bradford Allen, who had six other children, his heirs. There was evidence tending to show the location of the land described in the deed to Bradford Allen, and tending to show that it was known as the " Sandy Bottom tract of 160 acres." There was also evidence tending to show possession by Bradford Allen, and those claiming under him, for forty years, of *the land in controversy.* There were many deeds offered by defendant from heirs of Ezekiel Leary and others, which defendant insisted covered the land in controversy, and offered evidence tending to show it. There was no evidence that any judicial proceeding had ever been had for partition of the lands ·of Ezekiel Leary. The defendants claimed under deed from the heirs of Ezekiel Leary, which they contended covered the land in controversy. Take it that Emanuel Leary was tenant in common with the other

heirs of Ezekiel Leary, still Emanuel Leary's deed to Brad-
ford Allen in 1842 for the Sandy Bottom 160 acres was color
of title; and the forty years open adverse and continuous
possession under it, of the specific twenty-five acres in con-
troversy, by Bradford Allen and his son, the plaintiff, gives
them the title against the co-tenants, heirs of Ezekiel Leary,
and the defendants who claim under them. Indeed, twenty
years would have been sufficient, even if co tenancy had
been admitted. *Gaylord* v. *Respass*, 92 N. C., 553. The
plaintiff's title *in toto* being denied, is an admission of actual
ouster, and seven years was sufficient. *Withrow* v. *Bigger-
s'aff*, 82 N. C., 82, and *Page* v. *Branch*, 97 N. C., 97. It is
true that plaintiff is only one of the heirs of Bradford Allen,
but one tenant in common can maintain an action for recov-
ery of the common property. *Thames* v. *Jones*, 97 N. C., 121;
*Brittain* v. *Daniels*, 94 N. C., 781; *Yancey* v. *Greenlee*, 90 N. C.,
319, and cases there cited. This view of the case is clear
from the only exception taken on the trial, which was that
the Judge charged, "If the plaintiff, and those under whom
he claims, held possession of a part of the land embraced in
his deed for more than seven years openly, continuously and
adversely, it would ripen his title to all the land embraced
in his deed, which was not occupied by some one else." That
is, as the plaintiff, according to the above evidence, had a
deed for 160 acres, if he had shown himself in continuous
adverse possession of the twenty-five acres described in the
complaint, or any part thereof, for seven years (actual ouster
being admitted by defendants' denial of plaintiff's title), it
would ripen his title to the part so held in adverse possession.
The Court could not be understood to charge thus as to the
open adverse possession of an *undivided* one-seventh.

It is true that a plaintiff may claim title to one thousand
acres, and on proof of title, or possession ripening a color
of title to 100 acres, he will recover the 100 acres. But

here he alleges title to twenty-five acres; he shows color of
title to 160 acres, and adverse possession ripening that title
to the twenty-five acres claimed, and the jury following, it
is to be presumed, the instructions of the Court, answer as
to the query, " Is the plaintiff the owner of the twenty-five
acres described in the complaint?" " Yes; he is." This is
clear and unmistakable from the evidence, the charge and
the pleadings. That the jury should have added the identify-
ing description of it, that it was one-seventh of the Sandy
Bottom tract, is not strange, considering the denial of the
location of the land contained in the answer, and, at the
most, it was mere surplusage. There is nothing either in
the pleadings, in the evidence, or in the charge, to suggest
that the jury could have meant an *undivided* one-seventh, or
anything except a mere identification of the twenty-five
acres described in the complaint as being a part of a better
known tract called "Sandy Bottom." It would be a hard-
ship to put the parties to the expense of another trial, in
which the Court below says there "was a volume of evi-
dence," on account of the well intended identification of
the land sued for, which the jury unnecessarily, and by way
of surplusage, added to their unequivocal finding that the
plaintiff was "the owner and entitled to possession of the
land *described in the complaint.*"

The defendant, indeed, in his printed brief, admits that
the deed of 1842 to the plaintiff, in fact, conveyed only the
twenty-five acres specifically described in the complaint, but
it is immaterial whether the color of title was for 160 acres
or twenty-five acres; besides, we must follow the case as stated
by the Judge. The Judge told the jury the plaintiff could
recover the twenty-five acres, or a part thereof, if embraced
within the color of title, and of which he had shown seven
years' continuous adverse possession. Had the plaintiff
shown possession, as well as color of title, beyond the twenty-

five acres he could not recover it without an amendment to his complaint. This he did not ask    He is content with the response of the jury that he is the owner of the land described in the complaint and entitled to its possession. What the jury have given him, he should have judgment for without modification or further litigation.