J. A. PATTON v. THE WESTERN NORTH CAROLINA RAILROAD COMPANY.

*Fellow-Servants—Burden of Proof—Issues—Contributory Negligence.*

1. The burden of proof is on the plaintiff to show that a co-employé of a common master is a superior and not a fellow-servant, unless the nature of the employment shows the extent of the co-employé's powers.

2. Where the common master invests one of his employés with the power to hire, discharge, command and direct the other employés, the master is liable for his acts, and he is not a fellow-servant, although he works as any other servant, and there is nothing in the nature of the employment to show an authority to charge the common master.

3. So, while there may be nothing in the nature of the employment of a section master on a railroad to charge the master with responsibility for his acts towards his co-laborers, yet if the master gives him authority to command, discharge and employ the laborers, the common master is liable for his misfeasance towards his fellow-laborers in the exercise of the authority so conferred.

4. The only issues proper to be submitted to the jury are those raised by the constitutive facts alleged on the one side and denied on the other; and those issues which are merely evidential, and when found by the jury, only furnish facts which would be evidence to prove the main issue, should never be submitted.

5. One who is injured by jumping from a moving train is generally barred of a recovery by reason of his contributory negligence, but where a servant was ordered by his superior to do so in order to perform a duty for the company, it not appearing to the servant at the time that obedience would certainly cause injury; *It was held,* that there was no such contributory negligence as would prevent a recovery.

(*Dobbin* v. *The Railroad,* 81 N. C., 446; *Cowles* v. *The Railroad,* 84 N. C., 309; *McElwee* v. *Blackwell,* 82 N. C., 345; *Miller* v. *Miller,* 89 N. C., 209; *Overcash* v. *Kitchie,* 89 N. C., 384; *Swann* v. *Waddell,* 91 N. C., 108; cited and approved).

CIVIL ACTION, tried before *Graves, Judge,* at Spring Term, 1886, of McDOWELL Superior Court.

The plaintiff brought this action to recover damages for injuries sustained by him, as alleged in the material parts of his complaint, whereof the following is a copy:

"II. And the plaintiff, at and before the injuries and wrongs herein after mentioned, was employed by the defendant as a section hand on the section from ........ to Old Fort, on the line of the railway, at and for a certain hire and reward agreed upon by the parties in that behalf; that the plaintiff was hired and employed by one Grant, who was the agent and servant of the defendant in that behalf, the said Grant being the section boss or foreman for said section, with full power and authority of the defendant to hire and discharge hands and servants in that behalf on said section, and who was the superior of the plaintiff in that behalf, whose orders and commands, in the line of said service, as the agent, foreman and boss of the said defendant, the said plaintiff was lawfully bound to obey.

III. That on or about the ...... day of March or February, A. D. 1883, the said Grant, as such section boss, foreman

and agent of the defendant, and superior of the plaintiff, ordered and commanded the plaintiff to go on board a train, at the village of Old Fort, on the line of said defendant's railway; the train of the defendant being managed, controlled, run and conducted by the agents and servants of the defendant, and the plaintiff obeying the order and command of the said Grant, in the line of his duty under his contract of service, did get on said train with the said Grant, and became a passenger thereon in his line of duty, for the purpose of assisting in removing a wreck of a freight train on said railroad.

IV. That the train was in motion; and that as said train neared and approached the wreck, Grant, as the servant, agent and section boss of the defendant, being the superior of the plaintiff, with full power and authority of the defendant in that behalf, and the plaintiff being lawfully bound to obey the orders of the said Grant, agent and servant of the said defendant, and the said train being in motion and running at a swift rate of speed, the defendant, by its agent, servant and section boss, the said Grant, not regarding its duty in that behalf, and not exercising due care, carelessly, negligently and unskilfully ordered and commanded the plaintiff to jump from the train, being in motion as aforesaid, for the purpose of assisting other servants and section hands of the defendant in the line of their duty in that regard; the act of jumping from the train being extra-hazardous and dangerous, and the defendant, by its agents and servants, and by its agent and servant, the said Grant, well knowing the same, and the plaintiff being unacquainted with railway service in general, and a novice in railroad work, and being ignorant of the danger and hazard to which he was exposed by said command and orders of the said defendant, and without any fault or negligence on his part whatsoever, did, obeying said commands and orders of the defendant, jump from said train, being in motion.

V. In so jumping from the train, the plaintiff, by careless-ness, negligence and default of the agents and servants of the defendant, and for want of due care and attention by the said Grant, agent and servant as aforesaid, and the said defendant, the plaintiff was violently thrown down on the embankment of the railway of the defendant, whereby the plaintiff was greatly cut, bruised and wounded, and had his leg and ankle badly fractured and dislocated, so that he be-came and was sick, lame, and unable to walk."

The defendant denies the material allegations of the com-plaint, and avers as matter of defence:

II. That if plaintiff was injured, it was through the neg-ligent act of a fellow-servant in the employ of defendant's company, for which defendant is not responsible.

III. That the plaintiff contributed by his own negligence to his injury by jumping off a train while in swift motion, and by obeying commands which were manifestly danger-ous, according to his own allegation, and by other negligent and careless acts.

IV. That the complaint does not state facts sufficient to constitute a cause of action.

At the trial, the Court submitted to the jury the following issues, to which they responded as indicated at end of each:

I. Was Grant the superior of the plaintiff as stated in the complaint, whose commands the plaintiff was bound to obey, as alleged in the complaint?

Yes.

II. Did the said Grant command or order the plaintiff to jump from the car of the defendant while it was running at a swift rate of speed?

Yes.

III. Was the plaintiff injured thereby?

Yes.

IV. Did the plaintiff know that it was dangerous to jump from the car while it was running at a swift rate of speed?

Yes.

V. Could the plaintiff, by exercising the care of a man of ordinary prudence, have known it was dangerous to jump from the car while it was running at such a rate of speed?

Yes.

What damages has the plaintiff sustained, if any?

Damages, seven hundred and fifty dollars.

Upon the findings, the plaintiff moved for judgment, but the Court gave judgment for the defendant.

It appears from the case stated on appeal, that there was evidence that the plaintiff was employed as a section hand by Grant, who was master of a section on the railroad of the defendant, between Marion and Old Fort. That he, Grant, had control of the section hands, and discharged hands, and had a right to require obedience to his orders.

The proof showed that the plaintiff was not acquainted with railroad work or trains; had been in the employ of the company only three weeks prior to the wrong complained of. That the duty of the plaintiff as a section hand, was to work repairing the road, and to man the dump-car used by the section hands; that Grant had four hands on his section, and that it required four hands to handle the dump-car used by the section hands. Plaintiff testified that he was a novice at the business; did not know the danger involved in jumping from the car while moving, the day he was ordered by Grant to jump. That Grant told Godfrey, another section hand, to jump first, but Godfrey did not jump. The plaintiff's ankle was dislocated. The physician testified that the injury was permanent.

The plaintiff stated that when witness was fixing to jump off, Grant told him to be careful, there was danger of getting hurt, but witness did not know it until he jumped off. The train was running fast. (Counsel suggested " very fast?") Witness said : Pretty fast. Witness heard Grant tell Godfrey to jump off, and he did not do it; after witness was hurt, he supposed it was because Godfrey thought there was dan-

ger in it; did not ask Godfrey why he did not jump; that when plaintiff was fixing to jump, Grant told him to be careful; that he, plaintiff, was careful as he could be; he said Terrell, the engineer, was the first to come to him after he was hurt; that Terrell then said: "Don't know what Grant was thinking about, to tell him to get off while the train was in motion"; Terrell said that Grant said he would tell one of the hands to get off and help fix the dump-car; witness knew the car was going to stop on the top of the grade.

It was in evidence that Terrell, the engineer, was that day running an extra freight; that Grant had received orders to take his men and help put on some old trucks; that Grant took two of his section hands and put them on the train at Old Fort, to be carried to the dump or section car; that the dump-car was on the side of the railroad track, about half way up the grade east of the Catawba river bridge; that before leaving Old Fort, Grant asked the engineer of the freight train to stop at the dump at Hemphill's crossing, that the section hand might get off and put the dump-car on the track, so as to accompany the freight train; that the engineer refused, alleging that he was too heavily loaded to stop on that grade, as he could not start again, and was obliged to keep on up the mountain. There was evidence on the part of the defendant, by Grant, that was contradictory of the plaintiff's testimony; that Grant told the plaintiff and Godfrey, at Old Fort, that when the freight cars stopped at the top of the grade, they would jump off and go back to the dump-car, and help put it on, and bring it to the freight train; there was evidence tending to show that the up-grade was about half a mile long, and that the dump-car was about a quarter of a mile from the top of the grade; there was evidence tending to show, when opposite the dump-car, Grant left the engine, where he had been riding from Old Fort, and came down on the coal flats, where the plaintiff

and Godfrey were sitting; that Grant commanded Godfrey to jump off and help put the dump on the track; that Godfrey did not jump. Godfrey testified that Grant then turned to plaintiff and told him to jump when he saw the train moving as slow as it would move before it got to the top of the grade; that he noticed no slacking up of the train or slower rate of speed than it was then running at, till it reached the top of the grade; that plaintiff started to jump off, and Grant went forward to the engine; that plaintiff got down on his hands and knees as near the ground as he could and jumped and was injured.

Grant was introduced for the defendant, and denied that he had given the order as testified to by plaintiff; admitted that he had told plaintiff to be careful, but said it had reference to getting off the train when it stopped at the top of the hill. Witness Grant had been many years in the employ of the railroad company; was advanced from common section hand to master of construction train. The defendant introduced the engineer, who testified that he was running as fast as he could up-grade, was heavily loaded and could not stop until at the top of the grade. Said it required skill to jump off a train in motion. That he had dressed plaintiff's leg immediately after the accident, and then conversed with him. Could not remember the words of plaintiff, but did remember the substance of what plaintiff said. The substance of conversation was that plaintiff blamed himself for jumping off the car.

The Court gave judgment for the defendant on the verdict, and the plaintiff appealed.

*Mr. Jos. B. Batchelor, (Mr. P. J. Sinclair* also filed a brief,) for the plaintiff.

*Mr. Chas. M. Busbee, (Messrs. D. Schenck* and *Chas. Price* also filed a brief,) for the defendant.

MERRIMON, J., (after stating the facts).   There seems to be no well settled rule that classifies the agents and servants of a common employer, whether natural or artificial, first, into such as have authority to represent, act for and in the place of the employer in respect to the persons, business, matters and things wherewith they are charged; and secondly, such as have no such authority, but are merely fellow-servants. But without regard to such rule, there is no reason why such authority may not be specially conferred upon any such agent or servant.   In this case, the burden of proving the authority—its extent and compass—by competent evidence, would rest upon the party alleging it, unless the nature of the agency or employment implied its existence and extent. Thus, an employer might confer upon a particular laborer, charged to do a particular sort of service, but who simply by the nature of his employment would have no authority to represent or bind his principal in any respect, power to employ other like laborers with himself to do the service to be done, to direct and command them when, where, and how to work, to control and superintend them, and to discharge them from employment in his discretion, although he should labor with and as one of them   And there can be no question, that the employer would be answerable for the misfeasance or non-feasance of such agent in the course of his employment, and in the exercise of the power thus conferred upon him.   This is so, because the agent in such case, would be expressly authorized to represent, act for and in the place of his employer in the business designated and within the compass of the power conferred.

And so in the case before us, although the section master or foreman might not have authority arising from the nature of his employment, to bind the defendant for his acts towards and his commands to his fellow-servants, yet, if the defendant conferred upon him power and authority to employ laborers—fellow-laborers with himself—to work on the sec-

tion of the road wherewith he was charged, and authority to superintend them, to give them orders and commands in the line of work to be done, which they were bound to obey, and to discharge them from such employment, in his discretion, as alleged in the complaint and as the evidence introduced on the trial tended to prove, the defendant would be liable for his misfeasance and non-feasance in the course of the exercise of his authority thus conferred by it. This is so upon the plainest principles of law applicable to and governing the relations of principal and agent towards each other and third persons.

This case is not like the ordinary one of injury done by one fellow-servant acting as foreman or leader of several or many laborers, to one of his fellow-servants. The complaint expressly alleges that the section master named, was agent and servant, and had " full power and authority of the said defendant to hire and discharge hands and servants in that behalf on said section, and who was the superior of the said plaintiff in that behalf, whose orders and commands in the line of said service as the agent, foreman and boss of the said defendant, the said plaintiff was lawfully bound to obey," and there are other similar allegations to the same effect. Evidence was introduced on the trial to prove this material allegation, and the jury found by their verdict that it was true. So it appears that the section master in this case was not simply a fellow-servant of the plaintiff, but as well the agent of the defendant, charged with authority to employ, control and command the plaintiff, as to the labor he should do on the railroad of the defendant while he was so in its service, and to discharge him from such service, just as its President or other leading executive officers might have done; and the defendant must therefore be held liable for his misfeasance in the course of his agency, just as if the same had been done by its chief executive officer. *Dobbin*

v. *The Railroad Company,* 81 N. C., 446; *Cowles* v. *The Railroad Company,* 84 N. C., 309.

We think that the principal and real issues raised by the pleadings were not submitted to the jury. Except that as to damages, those submitted involved the ascertainment of evidential facts bearing upon the issues raised. The questions of fact as to the agency of the section master—the commands he gave the appellant—the injury sustained by the latter—the knowledge of the appellant that it was dangerous to jump from the car while it was swiftly moving, and that he might by ordinary care have known this fact, were questions arising in and embraced by the issues proper, and the jury might—ought—ordinarily to have determined them under proper instructions from the Court, in passing upon the principal issues raised by the pleadings. The statute (*The Code,* §§391–398,) does not contemplate or require, that an issue shall be submitted to the jury as to every important material fact controverted by the pleadings, nor is it necessary, expedient, or proper to do so.

The principal issues—those raised by the constitutive allegations of fact—should always be submitted, and issues as to important essential facts controverted by the pleadings, may in some cases be properly submitted, but a great number of them confuse the minds of the jury, while they frequently afford one side or the other opportunity to magnify and give undue weight to a particular fact, and, sometimes, obscure the main issues. This should be guarded against.

It seems to us that the principal issues presented by the pleadings, in addition to that as to damages, were: 1st. Was the plaintiff injured and endamaged by the default and negligence of the defendant? 2d. If so, did the plaintiff by his own default and negligence contribute to the injury he so sustained? These would have brought out the whole merits of the matter in litigation. The complaint alleges important evidential facts, denied by the answer, and thus issues

are raised. Surely such issues are not to be submitted to a jury. Only the issues raised by the constitutive facts alleged on one side and denied by the other in the pleadings, should be so submitted. *McElwee* v. *Blackwell,* 82 N. C., 345; *Miller* v. *Miller,* 89 N. C., 209; *Overcash* v. *Kitchie,* Ibid., 384; *Swann* v. *Waddell,* 91 N. C., 108.

The Court denied the appellant's motion for judgment upon the verdict of the jury upon the issues submitted to them, and gave judgment for the appellee.

Although it does not appear so affirmatively, it does by implication, that it decided upon the findings upon the fourth and fifth issues, that there was contributory negligence on the part of the appellant, and based its judgment upon this principal ground, and, probably, upon the further ground, that the injury was occasioned by the act of a fellow-servant. We have already seen that the latter ground was unfounded.

It appears that the section master was actively prosecuting the work of the defendant he had charge of, and he, and by his command, the plaintiff and another fellow-servant in that connection, got upon a passing freight train, to go some distance to a place where proper work was to be done. The train was heavily laden and going swiftly—how swiftly does not appear—up an ascending grade half a mile in length. While it was thus moving, and passing by the place where the work referred to was to be done, the section master commanded the appellant to jump from the train, which command he at once obeyed, and in doing so, sustained the injury because of which he complains in this action. It seems that this command was given and promptly obeyed, without hesitation. It was rash, negligent, unreasonable and unwarranted, but the danger to be encountered in obeying it, was not so manifest and so great, as under the circumstances, to render a prompt obedience to it contributory negligence on the part of the appellant. An ordinary laborer on railroads—

one of ordinary experience—might make a leap without injury—he might not unreasonably believe that he could, taking proper care, and especially so, when commanded to do so by a railroad employé of long experience, who had the right to command him in the course of his duty. While to jump from a rapidly moving train of cars is very hazardous, and ordinarily to do so, is negligence, it is not contributory negligence where the plaintiff—a laborer on the railroad—is suddenly commanded by his employer or its agent to do so, in the course of his employment, and the command at once obeyed from a sense of duty, and without waiting to think of and consider the hazard.

Such a case is exceptional. The agent of the employer suddenly commands the laborer to do an extra-hazardous act in the course of his duty—one that *may*, though not probably, be safely done by observing due care—one that must be done at once, if done at all. The laborer obeys the command promptly, nerved only by a faithful sense of duty, and as a consequence suffers serious bodily injury. In that case, the injured party does not, in legal contemplation, contribute to his own injury. The facts and circumstances were such as that he might, when suddenly called on, not unreasonably believe that the command was a proper one, that he ought to obey. Although the act was hazardous, it was not essentially dangerous. It was done suddenly and in obedience to the command of one who had the right to direct the laborer in the course of his duty. The latter had but a moment to think of duty—a moment to think of danger. The law attributes the injury in such case, to the negligence of the employer; its agent gave the unwarranted, negligent command, the injured party simply obeyed, and was not negligent because under the circumstances he did obey. It would be unreasonable and unjust to allow the employer to have immunity from civil liability for its own negligence,

or that of its agent, thus resulting in injury to a faithful servant.

We therefore think the Court erred in deciding that the appellant could not recover because of his contributory negligence.

The appellant might insist upon a new trial, but he asks only that judgment be entered here upon the verdict of the jury in his favor. We think he is so entitled.

The judgment of the Superior Court must therefore be reversed, and judgment entered here upon the verdict for the appellant. It is so ordered.

Error.                                        Reversed.