## CYPRIAN FREITAS *v.* PIONEER MILL COMPANY, LIMITED.

ERROR TO CIRCUIT COURT, SECOND CIRCUIT.

ARGUED JANUARY 27, 1911.                    DECIDED FEBRUARY 14, 1911.

HARTWELL, C.J., PERRY AND DE BOLT, JJ.

NEGLIGENCE—*master and servant—evidence by servant—hazard of employment—directed verdict.*

> In an action by a servant against his master to recover damages for personal injuries alleged to have been sustained by him as the result of the master's negligence, it was incumbent on the servant to show affirmatively a neglect of some duty on the part of the master, which the master owed to him while so employed, and which neglect was the sole and proximate cause of the injury. There being no evidence of negligence, the injury must be considered one of the usual and ordinary risks incident to the employment, which the servant assumed, and an order of court directing a verdict for the master is correct.

OPINION OF THE COURT BY DE BOLT, J.

This is a writ of error to review a judgment of the circuit court of the second circuit. The plaintiff in error brought an action against the defendant in error to recover damages in the sum of $6,125 for personal injuries alleged to have been sustained by him as the result of the negligence of the defendant while the relation of master and servant existed between them. The record before us shows that at the conclusion of the plaintiff's case the defendant moved for a directed verdict. The court sustained the motion and directed the jury to return a verdict for the defendant. Upon the verdict so ordered and returned judgment was entered accordingly. Whether the or-

der of the court directing the verdict was correct or not, is the sole question brought here by the writ of error.

At and prior to the time of the accident which occasioned the injury to the plaintiff complained of in this action, the defendant was the owner and operator of a sugar plantation at Lahaina, Maui, with a sugar mill, railroad tracks, cars, engines and a machine shop thereon. In the conduct of its business the defendant operates and runs its cars and engines in carrying its employees to and from their work, in hauling cane to its mill, and in transporting wood, lumber and other material to different places on its plantation.

The plaintiff, prior to his employment with the defendant, had worked for the "Kahului Railroad" over three years in its shop, "sometimes go in the engine;" but he did not do any "switching or braking." With regard to his employment with the defendant, commencing with the last week in September, 1908, and continuing to about the end of December of the same year, except for a few days, he was variously employed in and about the machine shop, oiling cars, braking on the yard engine, braking on the cars, and working at night in the yard. On January 3, 1909, the day on which the accident occurred, he went to work on the cars as a regular brakeman. The engine and cars, as well as the work in which they were being used, were under the supervision of the engineer in charge,—he and the plaintiff being the only persons engaged in this work.

With regard to the accident the plaintiff testified on direct examination as follows:

"Q. What occurred, if anything, after you went to work that day?

"A. I went brakeman and we took some men up to half way to Puukolii.—Japanese men. Then we were shoving cars and he told me to get in front to watch the track in case of track wrong. So I stayed in front with the lantern. We took the men up and come back. We got to the mill and went out to the pump,—Lahaina pump. We went out and brought some oil to the pump. Come back to the yard and stayed about half

an hour. Then we went down to the landing, Kaanapali landing and got some lumber. We went down and brought it back. We got back to the yard and then went to have our lunch.

"Q. What time was that?

"A. About twelve o'clock. Then I came back to the engine. After that the engineer come and we went down to Kekaa. On the way down we went to get cane on the other side of Kaanapali.

"Q. On leaving the yard, just after having your lunch, what was there besides the engine you were taking?

"A. Flat car behind to carry ropes and tools in case of any accident.

"Q. What were you doing after leaving the yard, before you got down to the place?

"A. I and the engineer got on the engine and went off. On the way, close to Kekaa, we met about fifteen cars. About eight cars loaded with wood. Koreans were filling up wood in the cars,—some cars with nothing. He stopped and told me to couple up the cars. I went to couple the car and then he told me to go in front and as soon as we get close to the switch jump down and run and fix the switch. I told him 'Alright; you come slow with the engine. Don't come too fast.' When I got ahead and gave him the signal, he blew two whistles and come ahead. About one hundred or two hundred feet from the switch the train was going about eight miles an hour about fast as ordinary horse traveling with a hack, I thought I could make it. I jumped and my foot slipped. The car hit me on the back and threw me on the track. I yelled out to the engineer. Then the car dragged me about thirty feet and run over my leg. I laid alongside the track then he came up to me. When he came he saw me lying down. I told him to take me to the hospital. Then he took me to the hospital."

On cross-examination the plaintiff testified as follows:

"Q. Now, you say that the cars were running about eight miles an hour, how do you know? How could you tell?

"A. He was going pretty fast, and my foot slipped.

"Q. You thought the train was running alright, didn't you and that you could get off?

"A. Yes.

"Q. You thought you were akamai enough?

"A. Yes.

"Q. And if you had not slipped you would have been alright?

"A. Yes.

"The Court: How was that?

"A. My foot slipped.

"Q. If your foot had landed alright, you would not have slipped?

"A. Yes.

"Q. You thought you were alright and that you could make it, didn't you?

"A. Yes."

The plaintiff was the only witness who testified as to the accident.

It is urged on behalf of the plaintiff that he and the engineer were not fellow servants, but that the latter was his superior, occupying the position of vice principal. In the view we take of the case it will not be necessary to decide this question. Assuming, however, but only for the purposes of this case, that the engineer was vice principal, we fail to discover, upon a careful examination of the record, any evidence tending to show that the plaintiff's injury was caused by the negligence of the defendant.

To maintain his action it was incumbent on the plaintiff to show affirmatively a neglect of some duty on the part of the defendant, which it owed to him while he was employed in its service, and which was the sole and proximate cause of the injury complained of. The mere fact that the plaintiff was injured while in the service of the defendant raises no presumption that the injury was the result of negligence on the part of the defendant. "On the contrary in all such actions, in the absence of definite proof of some negligence which directly or naturally results in injury to the employee, the accident is regarded as one of the hazards of the employment of which the servant takes the risk and for which there can be no recovery." *Mensch* v. *Pa. R. R. Co.*, 150 Pa. St. 598, 606; 29 Cyc. 589, 644; Labatt, Master and Servant, §§3, 261, 263, 265.

It being the established rule, that when one enters the service of another he assumes the usual and ordinary risks incident to the employment, and the burden being on the plaintiff to prove affirmatively the alleged negligence of the defendant, and there being an absence of such proof, it follows, therefore, that the injury complained of must be held to have been one of the usual and ordinary risks incident to the employment, which the plaintiff assumed when he entered the service of the defendant, and for which there can be no recovery.

The plaintiff at the time of the accident was about twenty-two years of age, and in view of his prior experience in and about machine shops and with engines and cars, though limited, it must be assumed, that when he entered upon the duties as brakeman, he knew the hazards attending his vocation. Thus viewing the case it is apparent that it was the duty of the court at the close of the plaintiff's evidence, to take the case from the jury and direct a verdict for the defendant.

Referring to the plaintiff's testimony, as quoted above, it will be observed that when the engine came "close to Kekaa," they stopped to couple up some cars, when, as the plaintiff says: "I went to couple the car and then he told me to go in front and as soon as we get close to the switch jump down and run and fix the switch. I told him 'Alright; you come slow with the engine. Don't come too fast.' When I got ahead and gave him the signal, he blew two whistles and come ahead." The plaintiff's contention is that this direction under the circumstances constituted negligence and that he, the plaintiff, had no alternative but to obey and jump. It is clearly apparent that there was no element of negligence in the direction of the engineer. When he said, "go in front and as soon as we get close to the switch jump down and run and fix the switch," it is clear that he could have only intended to run the cars, not only slow enough to permit the plaintiff to jump off with safety, but also slow enough to permit him to run ahead and have sufficient time to stop and fix the switch before the cars would reach the

switch. No other reasonable construction can be placed upon the language used, and the plaintiff must have so understood it. It will also be observed that the engine and cars were not in motion at the time this "command" was given; and of course, the plaintiff, unlike the plaintiff in *Patton* v. *W. N. C. R. Co.,* 1 S. E. 863, cited by the defendant, was not required "to jump from a rapidly moving train of cars," nor was he expected or required to act suddenly and "without hesitation." He gave the signal to start and told the engineer to "come slow," and when he tells us that "the train was going about eight miles an hour" when he jumped, could the jury have said, and can we now say, in the absence of any evidence to the contrary, that the engineer did not "come slow?" We think not. The plaintiff was practically master of the situation; he was left free to exercise his own judgment as to the time and place and when and where to jump. There is no evidence that the rate of speed was too high for safe jumping by brakemen, or that it was higher than is customary when ordinarily careful and prudent brakemen jump. The plaintiff's own acts and his testimony show that his judgment at the time was that the cars were going slowly enough, not only to permit him with safety to alight, but also slowly enough to give him ample time to reach the switch and adjust it before the cars would reach him.

The plaintiff also fails to point out any defect in the cars, engine, tracks, or appliances essential to a reasonably safe and proper operation of them; or that they were in any way improperly or unskilfully operated; or that there were not a sufficent number of employees to carry on the work with reasonable and ordinary safety; or that the engineer in any way failed to properly or skilfully perform his duty. If the defendant in any of these respects, or otherwise, were remiss in any of its duties, which it owed to the plaintiff, the failure of which resulted in the injury complained of while he was engaged in the service of the defendant, it was for him to show this by competent evidence. Having failed to adduce such evidence, we

Freitas v. Pioneer Mill Co., 20 Haw. 385.

must assume that the defendant performed its duty. The plaintiff undertook to trace the injury to the negligence of the defendant, and since he has failed to show such negligence, which was the sole and proximate cause of his injury, he cannot recover.

The injury, however unfortunate it was for the plaintiff, must be considered an accident only, for which there is no relief. There was nothing for the jury to consider. The order directing a verdict for the defendant was correct.

The judgment of the circuit court is affirmed.

*G. A. Davis* (*Atkinson & Quarles* on the brief) for plaintiff.

*C. C. Bitting* (*Thompson, Clemens & Wilder* on the brief) for defendant.

