This was an action for actionable negligence brought by plaintiff against defendants. Plaintiff is a carpenter of twelve years experience, and was employed by defendants to help build an apartment house for which defendants had the contract. C. A. Hamilton was foreman in charge of the work. Plaintiff was working under him. Defendant, M. R. Ritch, as to the foreman's authority, testified, "They could either do what he told them or quit." He was engaged in applying storm-sheeting, or sheathing.
The material testimony of plaintiff is as follows: "Thompson and I started storm-sheathing and they put us on the lower side of the house. We storm-sheathed up to the foot of the windows, the window openings, and Istarted to build a scaffold and Mr. Hamilton told me to go ahead and get itout of the windows. I started to build a bench or scaffold to work on and Mr. Hamilton said to go ahead and get the storm-sheathing out of the windows — the openings to the windows. The building was about four or five feet off the ground. That threw the window about eight feet from the ground. I finished storm-sheathing to the windows and started storm-sheathing from there to the top of the first story, where the second story started. I was standing in the bathroom window when the nail glanced. I set the nail in the board. Mr. Thompson was sawing the boards and pushing them up to me. I started nailing and set it *Page 74 
in the board and pushed it up to this place and reached out to nail it and the nail glanced and hit me in the eye. I was building a scaffold or benchto stand on for safety. If I had had a bench or scaffold to stand on, Iwould have been behind the nail. The board I was nailing was a wide piece.If I would stand on the scaffold, I would drive it in straight and I wouldhold the nail. When I was standing in the window, I would start the nail in the board, reach out and drive it in with the other hand. In standing on that window, it was something like two feet from the window to the point at which I was nailing. I had to hold with one hand and hold the board alsowith it and nail with the other hand. I had only one free hand. In standing on a scaffold, I would have had two free hands. I did not bring a scaffoldor bench because Mr. Hamilton told me not to do it. Not a thing in the world was provided there for me to stand on except the window opening. The windows were not finished. There was just an opening. The framing was put up and the storm-sheathing on the outside was to be brick-veneered. I know the customary way of putting on storm-sheathing. Q. What is that custom? (Defendants object; objection overruled; defendants except.) A. To have a proper place to work, bench or scaffold. (Defendants move to strike out the answer; motion overruled; exception.) When the nail flew out, it struck me in the eye. It just knocked me pretty near senseless." The doctor took his eye out. "I now have a glass eye."
The issues submitted to the jury and their answers thereto were as follows:
"1. Was the plaintiff injured by the negligence of the defendants as alleged in the complaint? Answer: Yes.
"2. Did the plaintiff, by his own negligence, contribute to his injury as alleged in the answer? Answer: No.
"3. What damages, if any, is the plaintiff entitled to recover of the defendants? Answer: $6,500."
The other necessary facts and assignments of error will be stated in the opinion.
The first material assignment of error made by defendants: At the close of plaintiff's evidence, and at the conclusion of all the evidence, defendants made a motion for judgment as in case of nonsuit. C. S., 567.
In Nash v. Royster, 189 N.C. at p. 410, Stacy, C. J., said: "It is the settled rule of practice and the accepted position in this jurisdiction that, *Page 75 
on a motion to nonsuit, the evidence which makes for the plaintiff's claim, and which tends to support her cause of action, whether offered by the plaintiff or elicited from the defendant's witnesses, will be taken and considered in its most favorable light for the plaintiff, and she is `entitled to the benefit of every reasonable intendment upon the evidence, and every reasonable inference to be drawn therefrom.' "
The court below overruled the motions, and in this we think there was no error.
C. A. Hamilton, the foreman of the defendants, and a witness for them, stated on cross-examination, without objection by defendants, "If a man hanging around holds with one hand and nails with the other, it is a prettyprecarious place. As to whether or not it is pretty dangerous depends upon the man, whether he is careless about it or not. It is dangerous anyway tobe hanging around in that way." Plaintiff's manner and method of doing the work was in accordance with the command of his superior, whom he was bound to obey or quit. Hamilton was the alter ego. Patton v. R. R., 96 N.C. 455;Davis v. Shipbuilding Co., 180 N.C. 74.
Hoke, J., in Thompson v. Oil Co., 177 N.C. at p. 282-3, says: "Not only is an employer supposed, as a rule, to control the conditions under which the work is done and to have a more extended and accurate knowledge of such work and the tools and appliances fitted for same, but the order itself given by the employer or his vice-principal directing the work and the natural impulse of present obedience on the part of the employee are additional and relevant facts to be considered in passing upon the latter's conduct in reference to the issue. Accordingly, several of the cases just cited are in illustration and support of the position that there is or may be a distinction in weighing the conduct of the employer and employee even when the principal objective facts are open to the observation of both. Thus, in Patton v. R. R., supra (96 N.C. 455), defendant was held liable for a negligent order which caused an employee to jump from a moving car, while the employee, obeying the order, was relieved of responsibility. The ruling apposite was stated as follows: `One who is injured by jumping from a moving train is generally barred of a recovery by reason of his contributory negligence, but where a servant was ordered by his superior to do so in order to perform a duty for the company, if not appearing to the servant at the time that obedience would certainly cause injury, it was held that there was no such contributory negligence as would prevent a recovery.'" See cases cited in Robinson v. Ivey, 193 N.C. 805.
In Howard v. Oil Co., 174 N.C. at p. 653, it is said: "It is well recognized that, although the machinery and place of work may be all that is required, liability may, and frequently does, attach by reason of *Page 76 
the negligent orders of a foreman, or boss, who stands towards the aggrieved party in place of vice-principal. Ridge v. R. R., 167 N.C. 510;Myers v. R. R., 166 N.C. 233; Holton v. Lumber Co., 152 N.C. 68; Noblev. Lumber Co., 151 N.C. 76; Wade v. Contracting Co., 149 N.C. 177."Robinson v. Ivey, supra.
The rule is so well settled that it hardly bears repeating, but it is well stated by Brodgen, J., in Jefferson v. Raleigh, 194 N.C. at p. 481: "The law of this State is that an employer of labor is required to exercise ordinary care in providing employees with reasonably safe methods and means to do the work for which they are employed. Thus, in Noble v. Lumber Co.,151 N.C. 76, it is said: `It is elementary learning that it is the duty of the master to furnish his servant a reasonably safe method, as far as practicable, for doing his work.' Again, in Terrell v. Washington,158 N.C. 282, it is held: `The master fails to supply a safe place for work if he allows work to be conducted there in a manner needlessly dangerous to servants.' To the same effect is the ruling in Tate v.Mirror Co., 165 N.C. 273, as follows: `Whether it was practical for the defendant to use any other device than a metal pipe for the purposes of insuring safety to its employees, and whether ordinary prudence required the use of it, were questions for the jury, which were properly submitted to them. If the situation called for the use of a different device, and this would have appeared to the ordinarily careful man, under the same circumstances, it was the duty of the defendant to supply it, instead of needlessly subjecting his servant to danger.' The opinion of the Court, quoting from Smith v. Baker, A. C., 325, proceeds: `An employer is bound to carry on his operations so as not to subject those employed by him to unnecessary risk, and he is not less responsible to his workmen for personal injury occasioned by a defective system of using machinery than for injury caused by defect in the machinery itself.' Thomas v.Lawrence, 189 N.C. 521."
On the question of proximate cause, in Hudson v. R. R., 176 N.C. at p. 492, it is said: "That it is not required that the particular injury should be foreseen and is sufficient if it could be reasonably anticipated that injury or harm might follow the wrongful act." DeLaney v. Henderson-GilmerCo., 192 N.C. 647; Clinard v. Electric Co., 192 N.C. 736.
With the principles of law stated, what are the facts succinctly? The building was about 4 or 5 feet off the ground, the window was about 8 feet from the ground, about in reach of a man standing. The storm-sheathing was put up to the window as far as the average man could reach. Then plaintiff started to build a bench or scaffold to stand on to continue nailing on the storm-sheathing. Defendant's foreman, or vice-principal, stopped plaintiff. By standing on the scaffold plaintiff could *Page 77 
drive the nail in straight and could hold the nail. He would have, as he expressed it, two free hands. He was stopped from doing the work this way and ordered by the foreman, or vice-principal, Hamilton, to nail from the window. The foreman said "the steadier and better place a man has to stand on to work, the safer he is." As regards the nailing from the window, the foreman, without objection, stated, "It is a pretty precarious place," also "it is dangerous anyway to be hanging around in that way," meaning from the window. Knowing the danger, the foreman, vice-principal, ordered plaintiff to do the work from the window — admitted by him to be a dangerous and precarious place. The obedient employee gets in the window. Thompson, his helper, was sawing the boards and pushing them up to him. He started the nail in the board and pushed the board in place, and reached out to nail it with his other hand. He had to hold with one hand and hold the board also with it and nail with the other hand. It was something like two feet to the point at which he was nailing. The method of doing the work brought his left eye in close proximity to the nail. When he hit the nail, it flew out and struck him in the left eye and destroyed it. He now has a glass eye.
It does not require any instruction to use a hammer and drive a nail. If that was the case here, the nonsuit should have been granted. Plaintiff's contention, as found by the jury, was that he was building a scaffold to use the hammer and drive the nails, but defendants' foreman stopped him from doing this. "I was building a scaffold or bench to stand on forsafety." He could have stood on the scaffold, could have held the nail and been behind it and kept it in place, and driven the nail from the front. He was stopped from doing it in this way and method, and ordered by the foreman to do it in such a way and method as the foreman says: "If a manhanging around holds with one hand and nails with the other, it is a prettyprecarious place."
 Hoke, J., in Bunn v. R. R., 169 N.C. p. 651, says: "In several recent decisions of the Court it has been held that, while an employer is required, in the exercise of ordinary care, to provide for his employee a reasonably safe place to work, and furnish him with tools and appliances safe and suitable for the work in which he is engaged, the principle is chiefly insistent in case of `machinery more or less complicated, and more especially when driven by mechanical power,' and does not always apply to `the use of ordinary everyday tools, nor to ordinary everyday conditions requiring no special care, preparation or provision, where the defects are readily observable, and where there was no good reason to suppose that the injury complained of would result.' "
We adhere to the doctrine therein stated, but the facts in the present case come within the principle that there was "good reason to suppose *Page 78 
that the injury complained of would result." Taking the combination of facts and circumstances — plaintiff's building the scaffold — with the logic of "safety first" — the orders of the foreman to desist and work from the window — the knowledge of the foreman that the method of using the simple tools, and to hold with one hand and nail with the other from the window, was precarious and dangerous. The sequence necessarily striking the nail, not from the front but from the side, with his left eye in the close proximity to the nail — the foreman could reasonably anticipate that injury and harm would follow the wrongful act and it did — the loss of plaintiff's eye.
In Hall v. Chair Co., 186 N.C. at p. 470, it is said: "Defense is interposed chiefly upon the ground that the machine was very simple; that the danger, such as it was, was open and obvious, and that the plaintiff assumed the risk of his injury. There was also a plea of contributory negligence. In fact, the please of assumption of risk and contributory negligence were both submitted under the second issue; and this, under authority of Hicks v. Mfg. Co., 138 N.C. 319, is a matter which must be left largely to the legal discretion of the presiding judge." Parker v.Mfg. Co., 189 N.C. 275; Ledford v. Power Co., 194 N.C. at p. 104.
The assignment of error made by the defendants, that the court refused to submit an issue as to assumption of risk, we do not think can be sustained.
The court below charged fully as to assumption of risk on the second issue of contributory negligence.
The next material assignments of error were to the questions on the part of plaintiff with respect to custom used in connection with the application of sheathing. The defendants' evidence went fully into the same matter. From an analysis of the evidence on both sides, we do not think, on the present record, that it could be held prejudicial or reversible error. SeeShelton v. R. R., 193 N.C. p. 670; Insurance Co. v. R. R., 195 N.C. 693.
The next material assignment of error is evidence in regard to liability insurance, we do not think can be sustained.
In Luttrell v. Hardin, 193 N.C. at p. 269, it is said: "It has been repeatedly held that the fact that a defendant in an actionable negligence action carried indemnity insurance could not be shown on the trial. Such evidence is incompetent."
The plaintiff was put on the stand in rebuttal. We think the material trouble complained of was brought about by the cross-examination of plaintiff. The court below refused in its legal discretion to order a mistrial on defendants' motion. See Gilland v. Stone Co., 189 N.C. 783. *Page 79 
We have read with care the charge of the court below. The contentions are fully and fairly set forth in behalf of plaintiff and defendants. The law of negligence, proximate cause, contributory negligence and assumption of risk, are all clearly and accurately defined. The law applicable to the facts was thoroughly explained. On the record we can find
No error.